Appeal Nos. 20-55820, 20-55870

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### SOCAL RECOVERY, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY; AND
### ROGER LAWSON,
*Plaintiffs and Appellants,*
*v.*
### CITY OF COSTA MESA,
A MUNICIPAL CORPORATION; DOES 1-100,
*Defendants and Appellees.*

---

### RAW RECOVERY, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY,
*Plaintiff and Appellant,*
*v.*
### CITY OF COSTA MESA,
*Defendant and Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE JAMES V. SELNA, JUDGE
CASE NOS. 8:18-CV-01304-JVS-PJW, 8:18-CV-01080-JVS-PJW

---

### PETITION FOR REHEARING EN BANC

---

| | |
|---|---|
| COMPLEX APPELLATE | EVERETT DOREY LLP |
| LITIGATION GROUP LLP | Seymour B. Everett |
| Mary-Christine Sungaila | Samantha E. Dorey |
| Katy Graham | Christopher D. Lee |
| Jessica M. Weisel | 18300 Von Karman Avenue |
| 620 Newport Center Dr., Ste. 1100 | Suite 900 |
| Newport Beach, CA 92660 | Irvine, CA 92612 |
| Tel: (949) 991-1900 | Tel.: 949-771-9233 |
| mc.sungaila@calg.com | severett@everettdorey.com |
| katy.graham@calg.com | sdorey@everettdorey.com |
| jessica.weisel@calg.com | clee@everettdorey.com |

*Additional counsel listed on following page*

JONES & MAYER
Kimberly Hall Barlow
3777 N. Harbor Boulevard
Fullerton, CA 92835
khb@jones-mayer.com

*Attorneys for Appellee City of Costa Mesa*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................ii

RULE 35(B) STATEMENT .................................................................. 1

BACKGROUND ................................................................................. 6

REASONS FOR GRANTING REHEARING ......................................... 10

    I.    The Opinion Conflicts with Precedent Because It Absolves Group Homes from Having to Present Evidence That They Serve Clients with Actual Disabilities.................................. 10

    II.    The Opinion's Treatment of the Alternate "Regarded As" Disability Prong Likewise Establishes a Threshold of Proof That Would Greenlight Discrimination Claims Following Any City Action. ................................................................. 18

CONCLUSION .................................................................................. 23

# TABLE OF AUTHORITIES

## *Cases*

*Albertson's Inc. v. Kirkingburg,*
   527 U.S. 555 (1999) ........................................................ 11

*Bradley v. Harcourt, Brace & Co.,*
   104 F.3d 267 (9th Cir. 1996) ................................... 10, 11

*Brown v. Lucky Stores, Inc.,*
   246 F.3d 1182 (9th Cir. 2001) ....................................... 14

*Casa Capri Recovery, Inc. v. City of Costa Mesa,*
   No. 18-329, 2020 WL 2620321 (C.D. Cal. Mar. 4, 2020) ............ 8, 9

*City of Edmonds v. Wash. State Bldg. Code Council,*
   18 F.3d 802 (9th Cir. 1994) .......................................... 16

*Koci v. Central City Optical Co.,*
   69 F. Supp. 3d 483 (E.D. Pa. 2014) ................................. 13

*MX Grp., Inc. v. City of Covington,*
   293 F.3d 326 (6th Cir. 2002) ..................................... 12, 17, 18, 21

*New Directions Treatment Servs. v. City of Reading,*
   490 F.3d 293 (3d Cir. 2007) .......................................... 14

*Ohio House, LLC v. City of Costa Mesa,*
   No. 19-1710, 2022 WL 18284404 (C.D. Cal. Aug. 26, 2022) ........... 8

*Oliveras-Sifre v. Puerto Rico Dep't of Health,*
   214 F.3d 23 (1st Cir. 2000) .......................................... 13

*Pac. Shores Properties, LLC v. City of Newport Beach,*
   730 F.3d 1142 (9th Cir. 2013) ....................................... 12

*Quinones v. University of Puerto Rico,*
   No. 14-1331, 2015 WL 631327 (D.P.R. 2015) ........................ 14

*Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,*
   294 F.3d 35 (2d Cir. 2002) ....................................... 16, 17

*SoCal Recovery, LLC v. City of Costa Mesa,*
   808 Fed. Appx. 531 (Mem) (9th Cir. 2020) .......................... 8

*Sutton v. United Air Lines, Inc.,*
   527 U.S. 471 (1999) ............................................. 3, 4, 11

*Toyota Motor Mfg., Kentucky, Inc. v. Williams*,
    534 U.S. 184 (2002) .............................................................. *passim*

*United States v. S. Mgmt. Corp.*,
    955 F.2d 914 (4th Cir. 1992) ......................................................17

*Wagner by Wagner v. Fair Acres Geriatric Ctr.*,
    49 F.3d 1002 (3d Cir. 1995).......................................................16

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) ...................................................11

*Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*,
    No. 19-56410, 2021 WL 4077001 (9th Cir. Sept. 8, 2021) ..............8

### Statutes

42 U.S.C. §3602 ....................................................................... 10, 14

42 U.S.C. §12102 ...................................................................5, 14, 20

Cal. Gov't Code §12926.....................................................................14

Cal. Health & Safety Code §11834.23.................................................7

### Rules

Fed. R. App. P. 35...............................................................................1

### Regulations

24 C.F.R. §100.201 ...........................................................................14

28 C.F.R. §35.130 .............................................................................12

45 C.F.R. §84.3 .................................................................................14

### Other Authorities

Letter from Gavin Newsom, Cal. Gov., to Cal. State Assem.
    (Oct. 12, 2019), *available at* https://www.gov.ca.gov/wp-
    content/uploads/2019/10/AB-920-Veto-Message-2019.pdf .............9

Matthew Gorman et al., *Fair Housing for Sober Living*,
    42 Urb. Law. 607 (2010)..................................................................7

## RULE 35(B) STATEMENT

Disability discrimination claims depend on proof of disability. To prove disability, plaintiffs can show that they have an actual disability or are "regarded as" disabled. When a plaintiff claims an actual disability, the Supreme Court has held the plaintiff must offer evidence to prove a physical or mental impairment that substantially limits one or more major life activities—as to which courts must make an "individualized assessment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198-99 (2002), *superseded by statute on other grounds*.

Under the new standards adopted here, however, a plaintiff claiming disability discrimination *based on its relationship with a disabled person* has no similar burden of proof. An associational plaintiff need only show that it aspires to serve disabled persons. Whether it does so is irrelevant to the analysis.

This Court should grant en banc review to reverse the panel opinion, which conflicts with controlling precedent about statutes of nationwide application, eliminates the individual assessment test in

associational disability claims, and allows associational plaintiffs to evade the evidentiary burden that individual plaintiffs must meet.

Plaintiffs represent that they operate sober living homes (SLHs), which serve as residences for recovering drug abusers and alcoholics within the City of Costa Mesa (City). To combat the negative effects on disabled persons and the community from an overconcentration of such businesses in residential neighborhoods, the City adopted a dispersal requirement to ensure that SLHs operated roughly one block away from each other. Its intent was to ensure that residents of SLHs actually experienced life in residential neighborhoods as they transitioned from treatment to sober living, and that neighborhoods were not transformed into blocks of institutional housing.[1]

After two SLH operators were denied exemptions from the dispersal requirement, they sued under the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and California's Fair Employment and Housing Act (FEHA). They claim the City

---

[1] The City's ordinances also protected SLH residents from unscrupulous operators in other ways.

discriminated against them based on disability because the SLHs house disabled individuals and are "regarded as" disabled by the City.

The district court granted summary judgment, finding plaintiffs failed to offer evidence that any resident in their SLHs met the statutory requirements for establishing a disability. The panel reversed in an opinion that conflicts with Supreme Court precedent, creates intra- and intercircuit conflicts, and adopts standards for summary judgment that would make almost any government action toward a plaintiff claiming to care for a disabled person per se discrimination.

*Proof of actual disability.* The opinion's analysis of the quantum of proof required to show actual disability conflicts with *Toyota*, 534 U.S. at 198-99, and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999), *superseded by statute on other grounds*, which hold that plaintiffs in disability discrimination cases must prove they have an actual disability based on an individualized assessment. The opinion rejects that standard for businesses claiming to serve the disabled.

But not every recovering drug abuser and alcoholic meets the criteria for being disabled. Their addiction must substantially limit a major life activity and they must not be a current user; they must have a

substantial period of sobriety before they are considered disabled. As the district court found, plaintiffs offered no evidence that a single client of the SLHs met these requirements and thus plaintiffs failed to create a triable issue of fact that they were associated with actually disabled individuals.

The opinion says such evidence is unnecessary. SLHs "could show their residents were 'actually disabled' and their future residents would be 'actually disabled' using admissions criteria and house rules." Add-28. This standard is impermissibly low. Contrary to *Toyota* and *Sutton*, this standard abandons the requirement that courts conduct individual assessments—which would consider whether an existing facility actually follows those admission criteria and house rules—and the plaintiffs' obligation to prove actual disability. In their place, the opinion sets a test for proving associational disability that would be met by any plaintiff who claims an intent to care for a disabled individual—even if that individual is not disabled. Rehearing is warranted to require that associational disability plaintiffs meet the same criteria as individual plaintiffs.

*The "regarded as" disabled standard.* The opinion also sets an impermissibly low threshold for establishing "regarded as" disability.

The City's permitting ordinances define a SLH as a residence for people who are disabled under federal and state law. In approving SLHs, the City accepts for ministerial purposes the SLH's representation that their clients are disabled. At that stage, it does not require the operator to prove its clients meet the statutory definition.

The opinion treats the City's definition of SLHs in the ordinances as an estoppel, creating per se "regarded as" disability anytime a city absolves a business of proving the veracity of its "SLH" or other preferred moniker at the permitting stage. But the "regarded as" standard protects people from discrimination "*because of* an actual or perceived physical or mental impairment." 42 U.S.C. §12102(3)(A). It protects persons who (1) are thought to be disabled when they are not; or (2) are subject to actions based on prejudicial and stereotypical beliefs about the disabled. Taking the City's definition in the ordinance as a binding admission that it regards SLHs as disabled serves neither of those purposes.

The opinion means that anytime a government, school, or employer chooses to accept a person's claim they are or have a relationship with someone who is disabled, without requiring evidence of that disability— as may be expedient under the circumstances—the person is forever

"regarded as" disabled. Thus, the person could challenge any subsequent adverse action as discriminatory and could circumvent any judicial gatekeeping by automatically satisfying the "regarded as" disability prong. That would be true, for instance, if the City acted to shut down a fraudulent SLH that housed no disabled individuals.

Equally problematic is the opinion bolstering a "regarded as" disability determination with public comments made at public hearings—comments which were never adopted by any City official. This, too, creates a dangerously low threshold for proving a disability. It allows a plaintiff to satisfy its burden of proving "regarded as" disability by attributing to government officials any prejudicial remark made by a member of the public. Even where, as here, the reasons identified by the government support no inference that it was acting based on biases or stereotypes about the disabled.

Rehearing en banc is necessary to correct these errors of law.

## BACKGROUND

National and statewide policy changes over the past two decades have contributed to a "sharp increase" in SLHs in single-family residential areas throughout Southern California, including Orange

6

County.  10-ER(SoCal)-2020.  The Affordable Care Act "significantly expanded the availability of health care coverage for substance abuse treatment[,]" which in turn led to an increase in SLHs.  *Id.*

The rise in these recovery centers produced overcrowding and overconcentration of businesses in residential areas, together with overburdened infrastructure, traffic, and noise.  10-ER(SoCal)-2023.  Some operators also engaged in predatory practices that exploited residents and the insurance money available under the ACA.  Matthew Gorman et al., *Fair Housing for Sober Living*, 42 Urb. Law. 607, 608 (2010).

The State of California licenses and regulates drug and alcohol treatment facilities, but it does not yet license or regulate SLHs.

California's law grants licensed treatment facilities a statewide exception to local boardinghouse and group home zoning restrictions when they serve six or fewer clients.[2]  There is no equivalent zoning exception for SLHs.

The City enacted ordinances that grant SLHs a local exception to its boardinghouse zoning restrictions, upon issuance of a permit.

---

[2] Cal. Health & Safety Code §11834.23(b) & (e).

While boardinghouses are prohibited in the City's R-1 neighborhoods, the ordinances allow businesses that serve recovering clients "who are considered handicapped under state or federal law" to obtain a permit to operate a SLH in those zones. 10-ER(SoCal)-2027–2031. They grant a similar exception for other residential zones. 10-ER(SoCal)-2045. They prohibit sex offenders, violent felons, and drug dealers from operating these businesses, enforce a no-drug policy, and a 650-foot dispersal requirement to ensure that the residential living facilities will mainstream their clients into the community rather than segregating them in overcrowded institutional clusters. 10-ER(SoCal)-2029–2031.

These ordinances have been scrutinized and withstood repeated discrimination challenges before juries, district courts, and this Court until the panel announced its surprise standard in this case, in which the City now requests en banc rehearing.[3]

---

[3] *E.g.*, *SoCal Recovery, LLC v. City of Costa Mesa*, 808 Fed. Appx. 531 (Mem) (9th Cir. 2020) (affirming preliminary injunction denial); *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*, No. 19-56410, 2021 WL 4077001 (9th Cir. Sept. 8, 2021) (affirming judgment after jury verdict); *Ohio House, LLC v. City of Costa Mesa*, No. 19-1710, 2022 WL 18284404 (C.D. Cal. Aug. 26, 2022) (jury verdict for City); *Casa*

The ordinances recognize that "group homes, including [SLHs], provide a societal benefit by providing the handicapped the opportunity to live in single-family neighborhoods, as well as providing recovery programs for individuals attempting to overcome their drug and alcohol addictions." 10-ER(SoCal)-2024.

They also recognize that "congregating [SLHs] in close proximity to each other does not provide the handicapped with an opportunity to 'live in normal residential surroundings,'" but places them into "living environments bearing more in common with the types of institutional/campus/dormitory living that the FEHA and FHAA were designed to provide relief from for the handicapped, and which no reasonable person could contend provides a life in a normal residential surrounding[.]" 10-ER(SoCal)-2024.

Because California does not yet license or regulate SLHs,[4] a self-proclaimed SLH is never required to show the state that it actually

_Capri Recovery, Inc. v. City of Costa Mesa_, No. 18-329, 2020 WL 2620321 (C.D. Cal. Mar. 4, 2020) (summary judgment for City).

[4] _See_ Letter from Gavin Newsom, Cal. Gov., to Cal. State Assem. (Oct. 12, 2019), _available at_ https://www.gov.ca.gov/wp-content/uploads/2019/10/AB-920-Veto-Message-2019.pdf ("I am supportive of the Legislature's intent" but "a substantial amount of work is still needed to develop a program that my administration can implement.").

houses recovering alcoholics or drug abusers in a sober setting.  Nor is there any state requirement that SLHs show successful outcomes for their clients.

The City's ordinances authorize permits only for those SLHs serving people who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law."  10-ER(SoCal)-2027.  As a "ministerial matter," the City does not question applicants' representations that they serve clients who are handicapped.  3-ER(SoCal)-556.

## REASONS FOR GRANTING REHEARING

### I.    The Opinion Conflicts with Precedent Because It Absolves Group Homes from Having to Present Evidence That They Serve Clients with Actual Disabilities.

To prove discrimination based on an actual disability, plaintiffs must establish they have: (1) physical or mental impairments that (2) substantially limit one or more major life activities.  42 U.S.C. §3602(h).  Longstanding precedent of the Supreme Court and this Circuit requires that, to reach a jury, a plaintiff seeking the protections of the FHA and ADA must provide evidence of both aspects of the actual disability prong. *Toyota*, 534 U.S. at 198; *Bradley v. Harcourt, Brace &*

10

*Co.*, 104 F.3d 267, 271 (9th Cir. 1996) (affirming summary judgment where plaintiff offered no evidence of her alleged impairments); *cf. Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir. 2001) (for summary judgment, plaintiff must support FHA allegations with specific facts). The Supreme Court and this Court have also established that determining whether a plaintiff has a disability requires an individualized assessment. *Toyota*, 534 U.S. at 198-99; *Sutton*, 527 U.S. at 483 ("individualized inquiry"); *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) ("case-by-case basis"), *superseded by statute on other grounds*.

The opinion acknowledges these standards, but goes on to carve out a massive exception for businesses that represent they intend to serve the disabled. Unlike an individual, who must offer admissible evidence to prove an actual disability, these businesses may bypass judicial gatekeeping by simply citing their own aspirational policies. Add-27. Whether they follow their policies or actually house people with disabilities is irrelevant to the opinion's analysis. In so holding, the opinion contravenes established standards for disability claims, summary judgment, and standing.

11

The opinion holds that the anti-discrimination laws do not require the SLH to establish an "'individualized assessment' of *every resident's* disability status." Add-24 (emphasis added). But that is neither what the City demanded nor what the district court held. The district court granted summary judgment because plaintiffs "could not establish that *any* of their residents had an 'actual disability[,]'" i.e., there was zero evidence that a single disabled individual lived in plaintiffs' SLHs. *Id.* (original emphasis). Rather than provide such evidence, plaintiffs offered "testimony about the admissions policies, house rules, and general day-to-day operations of their homes[.]" *Id.*

This standard ignores the statutory basis for SLHs' discrimination claims. They can bring claims under the FHA, ADA, and FEHA, despite not having disabilities, because they have a "relationship or association" with a person with a "disability." 28 C.F.R. §35.130(g); Add-25 n.22; *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002) (methadone clinic had standing "because it cares for and/or associates with individuals who have disabilities"); *accord Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 n.17 (9th Cir. 2013). But to proceed on this basis, a plaintiff must prove a relationship exists

12

with a disabled individual. *E.g.*, *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26-27 (1st Cir. 2000) (associational disability claim of advocates for persons with AIDS failed for lack of specific association with any disabled individual); *Koci v. Central City Optical Co.*, 69 F. Supp. 3d 483, 488-89 (E.D. Pa. 2014) (associational disability claim of mother failed absent facts establishing that son was disabled). This is because a plaintiff relying on a relationship has no greater protection under the anti-discrimination laws than an individual claiming an actual disability would receive.

The opinion here assumes that plaintiffs have the necessary relationship with disabled individuals because they "have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures." Add-27. But aspiring to care for the disabled and actually caring for them is not the same, particularly for existing homes serving recovering drug abusers or alcoholics. The disability standards under the FEHA and ADA make clear why this is.

First, to meet the statutory definition of being actually "disabled," individual plaintiffs must establish that their impairment substantially

limits a major life activity. *Toyota*, 534 U.S. at 197; 42 U.S.C. §12102(2); 24 C.F.R. §100.201(b). Major life activities include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. §84.3(j)(2)(ii). Plaintiffs offered no evidence—and the opinion cites none—that the SLHs' residents were substantially limited in any major life activities.

Second, not every recovering substance abuser is disabled. Under the FHA, ADA, and FEHA, current or recent abusers of drugs or alcohol are not disabled. *See, e.g.*, 24 C.F.R. §100.201(a)(2) (impairment includes addiction other than current, illegal drug use); 42 U.S.C. §3602(h) (disability does not include current, illegal use of or addiction to controlled substances); Cal. Gov't Code §12926(j)(5). Substance abusers only have a "disability" or "impairment" under the antidiscrimination laws if they have not used drugs or alcohol "for a significant period of time." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1186 (9th Cir. 2001).[5]

---

[5] Sobriety periods up to three months have been found insufficient to allege, or create triable issues on, disability. *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 310 (3d Cir. 2007) (remanded to determine if being drug-free for three months was sufficient); *Quinones v. University of Puerto Rico*, No. 14-1331, 2015 WL 631327, at *5 (D.P.R. 2015) (a "little over three months from when Plaintiff stopped using drugs" was insufficient).

SLHs like SoCal and RAW that house residents only recently released from short-term drug treatment and experiencing high degrees of relapses may not have a single resident with a disability protected under the ADA, FHA, or FEHA.[6]  3-ER(SoCal)-418; 3-ER(Raw)-557 (undisputed that plaintiffs house residents with an "average" of "less than 90 days sober").

Despite this critical distinction between substance abusers who are and are not disabled, the opinion holds plaintiffs satisfied their burden of proving disability with conclusory statements such as SoCal witness testimony that three staff members believed no current residents were using; that they enter after 30, 60, or 90 days of rehab; they stay for six or eight months; and company policy requires residents to stay sober or they are returned to rehab.  Add-31.  But such beliefs and aspirations that residents will succeed in treatment does not prove any of them meet the statutory definition for disability.

---

[6] The opinion also ignores the sobriety requirement by suggesting limitations resulting from drug use are enough.  Add-31 (citing former SLH resident's statement that he could not hold a job while using drugs). Not so.  Plaintiffs must show they suffer a substantial limitation *while sober.*

15

In short, the opinion writes out of the statute the plaintiffs' obligation to offer evidence of substantial limitation of a major life activity and non-use. Instead, it allows businesses—unlike disabled individuals themselves—to reach a jury without establishing that a single client is disabled.

None of the cases cited in the opinion (at 28-29) supports such a standard. This Circuit's opinion in *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994), does not hold that policies and procedures alone establish disability. Indeed, this Court made clear in *Edmonds* that admission to a program would not be enough to establish a handicap unless "coupled with non-use." *Id.*

Nor do the cited opinions from other circuits support the opinion. The parties in *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002 (3d Cir. 1995) did not dispute that the plaintiff, who suffered from Alzheimer's, "is a handicapped individual within the meaning of the [Rehabilitation] Act[.]" *Id.* at 1009.

In *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47-48 (2d Cir. 2002), *superseded by statute on other grounds*, a state regulation established specific requirements for individuals to

16

participate in the plaintiff's halfway house that included impairment and being "unable to abstain without continued care in a structured supportive setting." Once residents could function outside the structured setting, the regulations prohibited them from remaining in the halfway house. *Id*.

In *United States v. S. Mgmt. Corp.*, 955 F.2d 914 (4th Cir. 1992), medical records and records related to current drug use for eight clients were presented, subject to a protective order. *Id.* at 917. Moreover, the defendant "as much as concede[d] that all of the [plaintiff's] clients m[e]t the minimum threshold of being impaired." *Id.* at 919 n.3.

*MX Grp.* involved a proposed facility. The plaintiff's proposed home for methadone users required potential residents to show they had been suffering from a drug addiction for at least a year and offered testimony that the residents' narcotics addiction "necessarily included" limits to major life activities like "employability, parenting, and [everyday] functioning." 293 F.3d at 338. There was testimony that the facility "would include persons who are unable to work and 'function' because of their addiction, and who, according to documentary evidence, may not

have been able to do so for at least a year." *Id*. at 339-40. Here, there was no evidence of any limited function.

By absolving plaintiffs of the burden to prove they care for people with actual disabilities, the opinion permits businesses to defeat summary judgment on an almost non-existent record of actual disability.

Such a result cannot align with Congress's intent in providing specific criteria for when substance abusers are considered disabled under the ADA and FHA.

Rehearing en banc is necessary.

## II. The Opinion's Treatment of the Alternate "Regarded As" Disability Prong Likewise Establishes a Threshold of Proof That Would Greenlight Discrimination Claims Following Any City Action.

The opinion holds that plaintiffs raised a triable issue that they were discriminated against because they were "regarded as" being disabled. Add-32–36. As the opinion states, plaintiffs were required "to show that the City perceived their 'clients as being disabled and discriminated against them on that basis.'" Add-33 (quoting *MX Grp.*, 293 F.3d at 340).

The opinion overlooks the realities of the initial permitting process. The City does not investigate or decide whether a business that seeks a SLH permit actually serves the disabled. As a matter of resource allocation and practicality, the City simply grants the permit to any group home that otherwise meets the conditions in the ordinance, as a "ministerial matter," without requiring evidence that any clients are disabled.[7] *E.g.*, 3-ER(SoCal)-556.

The opinion would make that ministerial decision, which benefits SLHs and reduces their evidentiary burden at the permitting phase, grounds for estoppel in future discrimination lawsuits. That undermines the goal of making SLHs available to people who need their care. Governments would have to subject business applicants to far greater scrutiny and evidentiary demands up front to avoid being deemed to have admitted, or to having "regarded" their clients as disabled for all time.

This is inconsistent with the plain language of the ADA, which states that an individual is "regarded as" being disabled if "he or she has

---

[7] This is not the only situation where it may be expedient for a party to accept a claim of disability without requiring evidence. For instance, an employer may choose to accommodate an employee's request to leave work to care for a disabled child rather than question if the child is actually disabled.

been subjected to an action prohibited under this chapter *because of* an actual or perceived physical or mental impairment." 42 U.S.C. §12102(3)(A). The opinion reads the causation element of the "regarded as" test out of the statute. A plaintiff would not need to prove the defendant acted out of a perception that the plaintiff was disabled; that would be presumed under the "regarded as" test.

Such a result impermissibly limits the City's ability to exercise its police powers. Under the opinion's reasoning, if a homeowner obtains initial approval to operate a SLH, but then chooses to operate it as an ordinary boardinghouse for people without addictions, the City could take no action to shut down the boardinghouse without facing a discrimination claim capable of surviving summary judgment. The opinion practically invites such fraudulent conduct.

This same erroneous interpretation of the "regarded as" standard permeates the opinion's discussion of statements by the City Council and government officials. For instance, the opinion quotes a statement in the Development Director's initial denial of RAW's reasonable accommodation that the committee "accept[s] *for purposes of your request that you are making this request on behalf of individuals who are*

20

considered disabled under state and federal law." Add-34 (emphasis added). That is hardly grounds to conclude that the denial was caused by the perception that plaintiffs served the disabled.

Similarly, statements in reports referring to plaintiffs' facilities as SLHs, discussing the effects of overconcentration of SLHs in residential neighborhoods, or a state court finding that plaintiffs operated SLHs do not support the inference applied here that exemptions to the dispersal requirement were denied *because* SLHs serve the disabled.

These statements are different from the arguments raised in *MX Grp*. There, the defendants argued that the denial of permits for the plaintiff's methadone clinics was justified because its residents were likely to commit crimes. *MX Grp.*, 293 F.3d at 340-41. The remarks in *MX* linking methadone clinics with crime came from police officials and defendants relied on them in the litigation to justify denying the permits. *Id.* Here, by contrast, the opinion cites a few public comments that were never relied on or adopted by the City. The City's own statements are free of fear or stereotype. The City did not deny the exemptions based on any concern that SLH clients are prone to crime.

The opinion's standard for attributing statements of members of the public to government action would not just be limited to decisions about SLHs. If allowed to stand, any statements made by the public in permitting proceedings—no matter how extreme or ridiculous—could be attributed to a decision-maker considering any matter affecting the disabled. That there is no evidentiary basis showing the decision-maker adopted that reasoning would be irrelevant. It would raise a triable issue even if the record establishes the decision was based on other factors that did not rely on stereotypes about the disabled. As with the opinion's other legal errors, this approach to the "regarded as" test effectively absolves plaintiffs of their obligation to establish a prima facie case of disability at the summary judgment stage. Rehearing en banc should be granted to prevent a flood of discrimination claims relying on the opinion's loose standard of proving "regarded as" discrimination.

**CONCLUSION**

This Court should grant the petition for rehearing en banc.


Respectfully Submitted,

Dated: January 31, 2023      COMPLEX APPELLATE LITIGATION GROUP LLP

By: *s/Mary-Christine Sungaila*
     Mary-Christine Sungaila

*Attorneys for Defendant and Appellee*
*City of Costa Mesa*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 20-55820, 20-55870

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⊙ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,162 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Mary-Christine Sungaila | **Date** | January 31, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11** *Rev. 12/01/2021*

# ADDENDUM

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOCAL RECOVERY, LLC, a California limited liability company; ROGER LAWSON, | No. 20-55820 |
| | D.C. No. 8:18-cv-01304-JVS-PJW |
| *Plaintiffs-Appellants,* | |
| v. | |
| | OPINION |
| CITY OF COSTA MESA, a municipal corporation; DOES, 1-100, | |
| *Defendants-Appellees.* | |

| | |
|---|---|
| RAW RECOVERY, LLC, a California limited liability company, | No. 20-55870 |
| | D.C. No. 8:18-cv-01080-JVS-PJW |
| *Plaintiff-Appellant,* | |
| v. | |
| CITY OF COSTA MESA, | |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted July 12, 2022
Pasadena, California

Filed January 3, 2023

Before:  Kim McLane Wardlaw and Mark J. Bennett,
Circuit Judges, and Gary S. Katzmann,[*] Judge.

Opinion by Judge Bennett

**SUMMARY**[**]

### Disability / Housing

The panel reversed the district court's summary judgment in favor of the City of Costa Mesa in cases in which plaintiffs-appellants ("Appellants"), operators of sober living homes for persons recovering from drug and alcohol addiction, alleged that two new City ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA),

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the Americans with Disabilities Act (ADA), and the California Fair Employment and Housing Act (FEHA).

The ordinances, which made it unlawful to operate sober living homes without a permit, define sober living homes as group homes serving those who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law," and define group homes as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." Until the ordinances were adopted, the City did not regulate sober living homes differently from other residences. The ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center. No existing homes were grandfathered—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home. The ordinances did not address the criteria used to determine which home could remain, but provided that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers. The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement. The City issued citations to Appellants for operating the sober living

homes without approval, and filed state court abatement actions against Appellants.

Granting the City's motions for summary judgment, the district court found that Appellants did not establish that residents in their sober living homes were actually disabled, or that the City regarded their residents as disabled.

The panel held that Appellants and other sober living home operators can satisfy the "actual disability" prong of the ADA, FHA, or FEHA *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities; they need not provide individualized evidence of the actual disability of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. The panel held that in each action, the district court therefore erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition.

The panel held that in determining whether Appellants can establish disability under the "regarded as disabled" prong of the disability definition, the district court erred by finding that Appellants must prove the City's "subjective belief" that their residents were disabled. The panel explained that under this prong, the analysis turns on how an individual is perceived by others.

The panel noted that Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content

of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled.  The panel wrote that this type of evidence, if it satisfied the requirements of Federal Rule of Civil Procedure 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs.  The panel therefore reversed each of the district court's grants of summary judgment and remanded for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or "regarded as disabled" prongs of the disability definition.

## COUNSEL

Christopher Brancart (argued) and Elizabeth Brancart, Brancart & Brancart, Pescadero, California; Steven G. Polin, Law Offices of Steven G. Polin, Washington, D.C.; Garrett Prybylo, Seyfnia & Prybylo LLP, Los Angeles, California; Isaac Zyfaty, Much Shelist PC, Newport Beach, California; for Plaintiffs-Appellants.

Mary-Christine Sungaila (argued) and Efrat M. Cogan, Buchalter APC, Irvine, California; Seymour B. Everett, Samantha E. Dorey, and Christopher D. Lee, Everett Dorey LLP, Irvine, California; Kimberly Hall Barlow and James Touchstone, Jones & Mayer, Fullerton, California; for Defendants-Appellees.

Brant S. Levine (argued) and Nicolas Y. Riley, Attorneys; Pamela S. Karlan, Principal Deputy Assistant Attorney General; Kristen Clarke, Assistant Attorney General United

States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C.; Heather Nodler and Shira E. Gordon, Trial Attorneys; Jeanine Worden, Associate General Counsel for Fair Housing; Sasha Samberg-Champion, Deputy General Counsel for Enforcement and Fair Housing; Damon Smith, General Counsel; Department of Housing and Urban Development, Office of General Counsel, Office of Fair Housing, Washington, D.C.; for Amicus Curiae United States of America.

## OPINION

BENNETT, Circuit Judge:

In 2014, the City of Costa Mesa ("City") began amending its zoning code to reduce the number and concentration of sober living homes in its residential neighborhoods. Two of its new ordinances—Ordinances 14-13 and 15-11 ("Ordinances")—made it unlawful to operate sober living homes without a permit. The Ordinances define sober living homes as group homes serving those who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law," and define group homes as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." Costa Mesa, Cal., Mun. Code § 13-6. Unlike addiction treatment facilities, sober living homes do not require a license from the state of California. Until the Ordinances were adopted, the City did not regulate sober living homes differently from other residences.

The Ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center.  No existing homes were grandfathered under the Ordinances—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home.  The Ordinances did not address the criteria used to determine which home could remain.  They provided, however, that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Plaintiffs-Appellants SoCal Recovery, LLC ("SoCal") and RAW Recovery, LLC ("RAW") (together, "Appellants") operate sober living homes in Costa Mesa, California, for persons recovering from drug and alcohol addiction.  Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers.[1]  The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement.[2]  The City issued citations to Appellants for operating the sober living homes without approval.  The City also filed state court

---

[1] Four sober living homes at issue in this appeal were opened or acquired after 2014, but before the applicable Ordinances went into effect.

[2] Two other reasonable accommodation requests were denied because they were not submitted in writing, as required by the Ordinances.

abatement actions against Appellants.

Appellants sued the City, arguing that the Ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 et seq.[3]  The City moved for summary judgment against Appellants.  The district court granted the City's motions, finding that Appellants did not establish that residents in their sober living homes were actually disabled,[4] or that the City regarded their residents as disabled.[5]

---

[3] Appellants withdrew other claims they brought under 42 U.S.C. §§ 1985–1986 and California Government Code §§ 11135, 65008. Appellants also brought a retaliation claim under the FHA and a claim under 42 U.S.C. § 1983.  The district court granted summary judgment to the City on both.  The district court awarded the City attorneys' fees on all these claims, which it found "were asserted in a frivolous fashion." Using a rough estimate, the district court found 10% of the City's total requested fees were related to the frivolous claims and awarded the City $21,935.84 in fees in RAW's case and $20,923.01 in fees in SoCal's case.

[4] The district court held that Appellants must prove their "clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal Recovery, LLC v. City of Costa Mesa et al.*, No. SACV 18-1304, 2020 WL 2528002, at *5 (C.D. Cal. Apr. 10, 2020), *reconsideration denied*, No. SACV 18-1304, 2020 WL 4668145 (C.D. Cal. July 20, 2020).

[5] We grant RAW's motion to take judicial notice of the City Council resolution upholding the denial of the Knox Street home and the state court judgment and order in the City's abatement action against that home.  We deny as unnecessary Appellants' motions to take judicial notice of City Council and Planning Commission resolutions that are already in the record.

Because the district court erred by requiring Appellants to adduce individualized evidence of actual disability and failing to consider evidence that the City regarded the residents of the sober living homes as disabled, we reverse the district court's grant of summary judgment in both cases.

## I. BACKGROUND

### A. Sober Living Home Zoning Regulations

Through its 2014 and 2015 Ordinances, the City imposed new zoning regulations regarding group housing for persons with disabilities. Before the Ordinances, about 94 unlicensed sober living homes were legally operating in residential zones. Appellants argue that between 2014 and 2017, 73 sober living homes had closed.[6] The City's website indicates that there are 16 approved sober living homes today.[7] The City adopted the 650-foot separation restriction and other restrictions in an explicit effort to reduce the number of sober living homes operating within the City. The City was concerned about the "overconcentration" of sober living homes in some neighborhoods, which the City

---

[6] The source in the record cited by Appellants lists 68 closures, assuming each entry is a different property.

[7] *See City Approved Sober Living/Group Homes*, https://app.smartsheet.com/b/publish?EQBCT=f6f1941be3624556ab1b 03e829df4639 (last visited Aug. 31, 2022); *see also Group Homes/Sober Living Information and Application*, Costa Mesa, https://www.costamesaca.gov/city-hall/city-departments/development-services/community-improvement-division/group-homes-sober-living-information (last visited Aug. 31, 2022) (providing information on "City approved sober living/group homes," "Operators that have closed," and "Group homes cited").

believed was "deleterious" to those neighborhoods' residential character.

The 2014 Ordinance, Ordinance 14-13, regulates group housing for persons with disabilities in single-family districts. Costa Mesa Mun. Code §§ 13-310–312. It defined "[s]ober living home" as: "a group home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." *Id.* § 13-6. "Group home[s]," in turn, are defined as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." *Id.*

Ordinance 14-13 made it unlawful to operate a sober living home in a single-family district without obtaining a special use permit. *Id.* § 13-311. Group homes in single-family districts were limited to six occupants and needed to have a "house manager" residing in the home and present on a 24-hour basis. *Id.* § 13-311(a)(2), (a)(4).

In addition to the group home requirements, sober living homes needed to meet certain additional conditions. Relevant here, a sober living home could not be "located within six hundred fifty (650) feet, as measured from the closest property lines, of any other sober living home or a state licensed alcoholism or drug abuse recovery or treatment facility" ("separation requirement"). *Id.* § 13-311(a)(14)(i).**[8]**    An applicant could seek relief from the

---

**[8]** Other requirements include that all occupants other than the house manager are "actively participating in legitimate recovery programs." § 13-311(a)(14)(ii). Additionally, "[t]he sober living home's rules and regulations must prohibit the use of any alcohol or any non-prescription drugs at the sober living home or by any recovering addict either on or off site." § 13-311(a)(14)(iii).

"strict application" of the permit requirements by requesting a reasonable accommodation. *Id.* § 13-311(a)(15).[9]

The 2015 Ordinance, Ordinance 15-11, applied similar zoning regulations as Ordinance 14-13 but to multi-family residential districts. *Id.* §§ 13-322 to 324. The same conditions for a special use permit under Ordinance 14-13 applied to existing group homes with six or fewer residents, including the 650-foot separation requirement for sober

---

[9] Permit applications are first submitted to the Director of Economic and Development Services ("Development Director"), who may make an initial determination, or designate another official to do so. Costa Mesa, Cal., Mun. Code §§ 13-311, 322; *see id.* § 13-6 (defining "director" as "[t]he director of [economic and] development services of the City of Costa Mesa, or his or her designee"). In this case, the Development Director designated the City's Zoning Administrator to make an initial decision regarding a subset of sober home applications. An unfavorable decision by the Development Director or Zoning Administrator is appealable to the City Planning Commission and then to the City Council. *Id.* §§ 13-8 to -11. The application shall include, inter alia, a copy of the group home rules and regulations, the relapse policy, and "[a]n affirmation by the owner/operator that only residents (other than the house manager) who are handicapped as defined by state and federal law shall reside at the group home." *Id.* § 13-311(a)(1)(viii).

Reasonable accommodation requests must be filed in writing with the Planning Division. *Id.* § 13-200.62(a)–(b). Applicants shall state "[t]he basis for the claim that the individuals are considered disabled under state or federal law, and why the accommodation is necessary to provide equal opportunity for housing and to make the specific housing available to the individuals." *Id.* § 13-200.62(b)(2). And the application shall include documentation that the applicant is "an individual with a disability," "applying on behalf of one or more individuals with a disability," or "a developer or provider of housing for one or more individuals with a disability." *Id.* § 13-200.62(b)(4). The Development Director's decision on the request for reasonable accommodation can be appealed to the Planning Commission, and then the City Council. *Id.* §§ 13-7, -8, -10(i)(2)(c), -11(b).

living homes. *Id.* §§ 13-322, -324(a). Existing group homes
and sober living homes with seven or more residents needed
to obtain a conditional use permit within one year, and to
apply for an operator's permit within 120 days. *Id.* §§ 13-
323, -324(b).    A 650-foot separation requirement also
applied to sober living homes with seven or more residents.
*Id.* § 13-323(b). As with Ordinance 14-13, under Ordinance
15-11, a group home could seek relief from the "strict
application" of the permit requirements by submitting a
request for reasonable accommodation exempting it from a
requirement. *Id.* §§ 13-322(c), -200.62. Permit applications
would be reviewed by the Development Director and could
be appealed to the Planning Commission and City Council.
*Id.* §§ 13-7 to -11.

All permitting requirements in the Ordinances applied to
both existing sober living homes and proposed sober living
homes.  Since the Ordinances passed, the City has received
fifty-two reasonable accommodation requests from group
homes and has granted three, none to Appellants.

**B. SoCal Recovery, LLC**

SoCal operates three sober living homes relevant to this
appeal.  Two of the homes, located on Hudson Avenue and
Cecil Place, both opened before November 2014, are in
single-family districts, and provide housing to six or fewer
residents in recovery.  One property, on East 21st Street, is
in a multi-family residential district, providing housing for
up to thirty-two residents in recovery.  The East 21st Street
home opened prior to December 2015, before the multi-
family residential district Ordinance took effect.  Each of the
homes is within 650 feet of another facility covered by the
Ordinances.

SoCal submitted permit applications for all three homes and applied for a reasonable accommodation from the 650-foot requirement for the 21st Street property. The City's Development Director denied the reasonable accommodation request, citing the 650-foot separation requirement and concerns about the overconcentration of sober living residences in the area. At a 2016 public hearing, SoCal verbally requested reasonable accommodations for the Hudson Avenue and Cecil Place homes. The Zoning Administrator denied the permit applications because the houses violated the 650-foot separation requirement and denied the reasonable accommodation requests because they were not made in writing.

SoCal appealed. The Planning Commission upheld the denial of the reasonable accommodation request and permit application for the 21st Street property. The Planning Commission upheld the denials of the permit applications for the Hudson Avenue and Cecil Place homes without discussing the reasonable accommodations requests.[10] The City Council adopted resolutions upholding the decisions of the Planning Commission, finding that each of the homes violated the separation requirement. The City Council "determined that a separation requirement for such facilities will still allow for a reasonable market for the purchase and operation of sober living homes within the City and still result in preferential treatment for sober living homes."

Like the Planning Commission, the City Council denied the reasonable accommodation request for the 21st Street

---

[10] SoCal did not appeal the reasonable accommodation denial for the Hudson Avenue and Cecil Place homes to the City Council.

home, finding that waiver of the 650-foot separation requirement was "not necessary to allow one or more individuals who are recovering from drug and alcohol abuse to enjoy the use of <u>a</u> dwelling within the City" even if, "[i]n theory, [waiving the requirement] would allow [them] to enjoy the use of <u>these</u> dwellings."

The City then issued notices of violation to all three homes, informing SoCal that they were operating unlicensed homes in violation of the Zoning Code and ordering them to cease operations within sixty days. The City also brought an abatement action in state court, targeting one of the homes.

SoCal then brought this suit. SoCal alleged that its sober living homes were illegally "subject to the discriminatory limitation" in the zoning code—the "separation requirement limiting the number of Sober Living Homes that may exist" in the residential zones.[11]

During discovery, the City requested from SoCal documents related to the "disability" status of every one of its clients. The records the City requested included "all medical records from all health care providers which provided any of [SoCal's] clients any treatment [starting from] January 1, 2014," "all documents that relate to clients' medical and health information and histories, and information and histories regarding clients' drug use," and records of all drug tests performed at the facilities. SoCal refused to produce those documents, or to have any of its employees testify about them, asserting that they were

---

[11] SoCal also filed a motion for a preliminary injunction, which the district court denied. We previously affirmed the district court's decision.

privileged under HIPAA.**¹²**  The City moved for summary
judgment, arguing that without individualized evidence,
SoCal's statutory disability discrimination claims failed
because SoCal had not demonstrated a genuine dispute of
material fact as to whether any of its residents were
"disabled" under the ADA and FEHA, or "handicapped"
under the FHA.

On summary judgment, two relevant issues were
whether Appellants' residents had an actual disability or
were regarded as disabled by the City.  First, SoCal argued
that a triable issue of fact existed as to whether any of its
residents had an "actual disability" based on evidence about
its admissions policies, rules, and daily operations, as well
as deposition testimony from SoCal staff.  To argue that their
residents were regarded as disabled by the City, SoCal also
cited assertions by the City, including in the language of the
Ordinances, the City's administrative rulings on the sober
living homes' zoning requests, and the state court abatement
action.

Second, SoCal argued that a disputed factual issue
existed as to whether the City regarded its residents as
disabled, pointing to the City's statements throughout the
permit application and reasonable accommodation process,
as well as the residents' testimony to the City Council.
SoCal cited the City's admission that SoCal "made a
showing that the [reasonable accommodation] application is
on behalf of disabled individuals in recovery from drug and
alcohol substance abuse."  Thus, under the definitions in the
Ordinances, SoCal stated that it was "required to prove that

---

**¹²** The City did not seek to compel production of the medical records
SoCal refused to produce.

it was making a reasonable accommodation request on behalf of disabled individuals." SoCal argued that the Ordinances classified "a disabled household . . . as a Sober Living Home" and then subjected it to "discriminatory limitation[s] . . . that are not imposed on other groups of unrelated non-disabled persons or other groups of disabled persons."

### C. RAW Recovery, LLC

RAW provides "housing to disabled individuals in recovery from drug and alcohol abuse." Before the 2015 Ordinance went into effect, RAW provided sober living at three homes in multi-family zoning districts in Costa Mesa. Two were on adjacent parcels on Jeffrey Drive and one was on Knox Street.

Pursuant to Ordinance 15-11, RAW submitted timely conditional use permit applications and reasonable accommodation requests for the three homes. In its reasonable accommodation requests, RAW sought "waiver of the spacing requirements," so that its contiguous locations on Jeffrey Drive could remain open and its Knox Street home could be treated as a "single housekeeping unit" and thereby be exempted from the Ordinances' requirements for group homes.[13]  RAW's applications and requests were

---

[13] The Ordinances specifically exempt "any group home that operates as a single housekeeping unit" from regulations concerning group homes. Costa Mesa, Cal., Mun. Code § 13-6. Designation as a single housekeeping unit "means that the occupants of a dwelling unit have established ties and familiarity with each other, jointly use common areas, interact with each other, share meals, household activities, and expenses and responsibilities; membership in the single housekeeping unit is fairly stable as opposed to transient, members have some control

denied; the contiguous Jeffrey Drive homes were denied at each stage of the process, whereas the Knox Street home's application denial was more complicated.[14]

RAW joined a federal court action seeking monetary, declaratory, and injunctive relief for zoning discrimination

---

over who becomes a member of the household, and the residential activities of the household are conducted on a nonprofit basis." *Id.* Such designation exempts a dwelling from, inter alia, the 650-foot requirement. *See id.* § 13-311.

Notably, the City Council provided in the 2014 Ordinance that "sober living homes do not function as a single-family unit nor do they fit the City's zoning definition of a single-family for the following reasons: (1) they house extremely transient populations . . .; (2) the residents generally have no established ties to each other . . .; (3) neighbors generally do not know who or who does not reside in the home; (4) the residents have little to no say about who lives or doesn't live in the home," among others.

RAW did not specifically argue that its Knox Street home met the definition of a "single housekeeping unit," but did state in its reasonable accommodation application that "residents of RAW are not 'transient' by nature and function and interact with each other much in the same way as 'the functional equivalent of a traditional family.'"

[14] RAW's Knox Street conditional use permit application, was initially denied by the Development Director, then approved by the Planning Commission on appeal. Two City Councilmembers called for review because they believed the home was within 650 feet of a state-licensed facility. Though a City attorney advised that Ordinance 15-11 "would not permit the City Council to take into consideration state licensed homes that had not applied for use permits, as a basis for finding a 650 foot separation conflict," the City Council reviewed the application, overturned the Planning Commission, and revoked the permit. The City Council cited maintenance and secondary concerns of smoking and noise. The City Council passed a resolution reflecting the revocation of the permit, citing the separation requirement.

on the basis of disability.[15]  RAW primarily argued that the
City's "draconian permitting requirements" for group homes
and sober living homes "are discriminatory on [their] face,
and as applied to Plaintiffs, as well as other applicants
similarly situated."  RAW asserted that "Ordinance 15-11,
which requires that all group homes be at least 650 feet
apart," is a "tool[] the City uses to enforce its policy of
discrimination" against people in recovery.

     The City moved for summary judgment, arguing that
"Plaintiffs' discrimination claims fail because Plaintiffs
cannot meet their burden to prove that they are associated
with individuals that qualify as disabled."  The City alleged
that RAW "must prove on a case-by-case basis" that all its
residents are disabled or regarded as disabled and are no
longer using illegal drugs.[16]  Because RAW did not do so,
the City argued, "all of [its] claims fail."  RAW argued that
it could prove the disability of its residents through the City's
admissions and witness testimony.  It argued that "[t]here
should be no doubt that [RAW's] patients are statutorily
handicapped" given they are recovering from drug and/or
alcohol addiction and they must be sober to live in RAW's
homes.  RAW also argued that "[t]here is no question that
the City of Costa Mesa regarded the individuals residing in

---

[15] Northbound Treatment Services, which is no longer a party to this
case, filed the initial complaint, and added RAW as a plaintiff in its first
amended complaint.

[16] As with SoCal, the City requested "all medical records from all health
care providers which provided any of [RAW's] clients any treatment at
any time [starting from January 1, 2014] to present," as well as "all
documents that relate to clients' medical and mental health information
and histories, and information and histories regarding clients' drug use."
RAW refused to produce the records, and the City never sought to
compel their production.

[RAW's] group homes and sober living homes as disabled" because "[i]t is memorialized in every step of the use permit application process and reasonable accommodation requests." RAW argued that the City's permit and reasonable accommodation processes required RAW "to put forward proof of the disability of the residents," stating that the "City in processing the applications has admitted and accepted that Plaintiffs provided housing to a class of disabled persons." Finally, RAW argued that the City regarded their residents as disabled because of City resident testimony at the City Council hearing indicating "fear of the influx of felons coming into the neighborhood, and the violence and damage" they would bring.

## D. District Court Proceedings

The district court issued substantively similar rulings in each case, granting summary judgment to the City on Appellants' ADA, FHA, and FEHA claims because Appellants had failed to create a genuine dispute of material fact as to whether their clients have a "handicap" or "disability" under the statutory definition. *SoCal*, 2020 WL 2528002, at \*4–6; *Nat'l Therapeutic Servs., Inc. v. City of Costa Mesa*, No. SACV 18-1080, 2020 WL 5005550, at \*6 (C.D. Cal. July 17, 2020). Under the FHA and the ADA, "disability" is defined as "(1) a physical or mental impairment which substantially limits one or more . . . major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); *see also id.* § 12102(1). Though the FHA uses the word "handicap" instead of "disability," "handicap" is defined using the same three alternative definitional prongs as "disability" under the ADA. Thus, the words "handicap" and "disability" are construed to have the same meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

FEHA defines "mental disability" and "physical disability" more specifically and incorporates the ADA's definition of disability if it provides "broader protection or coverage." *See* Cal. Gov't Code § 12926(j), (m), (n). Federal courts analyze FEHA claims under the same standard as FHA claims. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013).

On the "actual disability" prong of the disability definition, the district court concluded in each case that Appellants were required to provide individualized evidence that "their clients," *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at \*6, "have a physical or mental impairment that substantially limits one or more major life activities." *SoCal*, 2020 WL 2528002, at \*5. In each case, the court agreed with the City that there is no "per se rule that all individuals in a drug rehabilitation program qualify as disabled or protected." *Id.* at \*4; *see also Nat'l Therapeutic Servs.*, 2020 WL 5005550, at \*4. According to the district court in *SoCal*, "[t]hat [Appellants] require[] sobriety for [their] residents does not change that [they] must prove [their] clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal*, 2020 WL 2528002, at \*5.

In both actions, the district court held that Appellants did not meet the "record of disability" prong of the definition because they did not produce their residents' medical records and asserted privilege when the City requested those records during discovery.[17] *Id.* at \*5; *Nat'l Therapeutic Servs.*, 2020

---

[17] Appellants did not rely on this prong below to establish that their clients were disabled.

WL 5005550, at \*5. As to the "regarded as" prong of the definition, the court's only proffered reason for granting summary judgment was that Appellants' evidence was "either inadmissible, mischaracterize[d] what the City required from [Appellants] in the application process, and/or [did] not establish the City's subjective belief of the clients' impairments."**18** *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at \*5; *see also SoCal*, 2020 WL 2528002, at \*6.

Appellants timely appealed the grants of summary judgment.**19**

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir. 2004).

---

**18** The district court did not discuss in either case which evidence was inadmissible or why any of the evidence was inadmissible. And it did not discuss how Appellants had mischaracterized what the City had required of Appellants in the application process.

**19** SoCal filed a motion for partial reconsideration asking the court to reconsider its holding that SoCal had failed to create a material dispute of fact as to whether the City "regarded" its residents as disabled. *SoCal*, 2020 WL 4668145, at \*1–2. The court denied that motion, reiterating that the evidence SoCal presented "did not establish a triable issue of fact as to whether the City regarded Plaintiff's *specific clients* as disabled." *Id.* at \*2.

## III. DISCUSSION

Appellants argue that the district court applied the wrong legal standard on the questions of what evidence is required to establish actual or perceived disability. They contend that they should not have been required to provide individualized evidence of their clients' disabilities. Appellants also argue that a genuine dispute of material fact exists as to whether their residents are "regarded as" disabled by the City. We agree that the district court applied incorrect legal standards and did not properly consider the summary judgment evidence Appellants presented. We therefore reverse the district court's grants of summary judgment on the FHA, ADA, and FEHA claims.

### A. Statutory Background

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of a handicap of that person, a resident or intended resident, or any person associated with that person. 42 U.S.C. § 3604(f)(2). The statute gives any "aggrieved person" the right to sue, and broadly defines an "aggrieved person" as anyone who "claims to have been injured by a discriminatory housing practice." *Id.* §§ 3602(i)(1), 3613.

FEHA makes it unlawful "[t]o discriminate [because of disability] through public or private land use practices, decisions, and authorizations." Cal. Gov't Code § 12955(*l*). Any "aggrieved person" can sue. *Id.* § 12989.1. An "aggrieved person" is "any person who claims to have been injured by a discriminatory housing practice or believes that the person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 12927(g). The FHA and FEHA invalidate any state or local law that "purports to

require or permit" an action that would be a discriminatory housing practice. 42 U.S.C. § 3615; Cal. Gov't Code § 12955.6.

Title II of the ADA makes it unlawful for a public entity to discriminate through its zoning laws against (1) a person with a "disability," 42 U.S.C. § 12132, or (2) a person who has a "relationship or association" with a person with a "disability," 28 C.F.R. § 35.130(g). The ADA gives "any person alleging discrimination" under the provision the right to sue. 42 U.S.C. § 12133; *see also Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009).

"Disability" in the ADA (and therefore FEHA) and "handicap" in the FHA are defined as: (1) a "physical or mental impairment which substantially limits one or more of [a] person's major life activities," (2) "a record of having such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. §§ 3602(h), 12102(1).[20] The first definition is often referred to as the "actual disability" prong, and the third as the "regarded as" prong.

## B. Actual Disability

To establish a disability under the "actual disability" prong of the ADA, FHA, or FEHA, a plaintiff must show "a physical or mental impairment" that "substantially limits" their ability to engage in one or more "major life activities." 42 U.S.C. §§ 3602(h), 12102(1); *Pac. Shores Props.*, 730 F.3d at 1156 n.14 (applying FHA standards to FEHA claims). Alcoholism and drug addiction are "impairments"

---

[20] Recall that although FEHA defines "mental disability" and "physical disability" more specifically than the ADA, it incorporates the ADA's definition of "disability" if the ADA would provide broader protection. *See* Cal. Gov't Code § 12926(n).

24      SOCAL RECOVERY, LLC V. CITY OF COSTA MESA

under the FHA, 24 C.F.R. § 100.201(a)(2), and the ADA, 28 C.F.R. § 35.108(b)(2). *See also Pac. Shores Props.*, 730 F.3d at 1156 ("It is well established that persons recovering from drug and/or alcohol addiction are disabled under the FHA and therefore protected from housing discrimination."). The impairment cannot include "current, illegal use of or addiction to a controlled substance." 42 U.S.C. § 3602(h); *see also id.* § 12114(a).

The district court concluded in both actions that Appellants could not establish that *any* of their residents had an "actual disability" because the evidence they adduced, including testimony about the admissions policies, house rules, and general day-to-day operations of their homes, was not sufficiently "individualized" under *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*. 534 U.S. 184, 199 (2002), *superseded on other grounds by* the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553; *see Nat'l Therapeutic Servs.*, 2020 WL 5005550, at \*5; *SoCal*, 2020 WL 2528002, at \*5. In *Toyota*, the Supreme Court held that "the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." 534 U.S. at 198 (cleaned up). Thus, a plaintiff must prove the relevant person's disability status in a "case-by-case manner." *Id.*

Appellants contend that an "individualized assessment" of every resident's disability status was unnecessary for their zoning discrimination claims to survive summary judgment or prevail at trial. We agree. At the outset, Appellants had standing to sue. Appellants are not disabled or handicapped, but they stated a claim under the FHA because they claimed they were "'aggrieved' by housing discrimination against

the disabled." *Pac. Shores Props.*, 730 F.3d at 1157 n.16.[21] They stated a claim under the ADA because they were "alleging discrimination on the basis of disability." *Id.* at 1157 n.17 (parenthetically quoting 42 U.S.C. § 12133).[22] They stated a claim under FEHA because they claim to "have been injured by a discriminatory housing practice." Cal. Gov't Code §§ 12927(g), 12989.1(a).[23]

The separation requirement prevented Appellants from conducting their normal business operations. Thus, they

---

[21] "The sole requirement for standing to sue under the FHA is the Article III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001) (cleaned up and citation omitted). For purposes of "the FHA. . . a plaintiff need not be among the class discriminated against in order to have standing. In particular, an organization may have standing to bring suit on its own behalf, without relying in a representative capacity on the standing of any third parties." *El Dorado Ests. v. City of Fillmore*, 765 F.3d 1118, 1121 (9th Cir. 2014) (citation omitted).

[22] An organization has standing to sue under the ADA on its own behalf by establishing an "injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular conduct in question." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (brackets omitted) (quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)). Thus, a plaintiff that "has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities . . . has standing to bring . . . suit on its own behalf." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002).

[23] Both this court and California courts assess FEHA standing under FHA standards. *See, e.g.*, *Sisemore v. Master Fin., Inc.*, 151 Cal. App. 4th 1386, 1424–26 (2007) (applying FHA standing analysis to FEHA claims); *Walker*, 272 F.3d at 1124–25 (Plaintiff had standing under FEHA because it had standing under the FHA).

were aggrieved by the zoning policies. That every resident may not have been disabled does not mean Appellants were not aggrieved by discrimination against the disabled. Appellants should not have been required to prove the actual disability of their residents, in "a case-by-case manner," to meet the actual disability prong for their sober living homes. *Toyota Motor Mfg.*, 534 U.S. at 198.

Appellants' sober living homes and other dwellings intended for occupancy by persons recovering from alcoholism and drug addiction are protected from illegal discrimination against the disabled without the need for Appellants to present individualized evidence of the "actual disability" of their residents. The district court therefore applied the incorrect legal standard in both actions when it concluded that Appellants could not establish "actual disability" because they failed to present evidence of their residents' disability status.

The panel finds persuasive the United States' amicus brief, which argues that sober living homes need not provide individualized evidence of their residents' disabilities to establish a cause of action for disability discrimination under the FHA or the ADA. Under the FHA, as the United States argued, state and local governments are prohibited from discriminating *on the basis of disability* through zoning and land use practices. *See Pac. Shores Props.*, 730 F.3d at 1157. In discussing amendments to the FHA, the House Judiciary Committee explained that the FHA ban "is intended to prohibit the application of special requirements through . . . conditional or special use permits that have the effect of limiting the ability of [people with disabilities] to live in the residence of their choice in the community." H.R. Rep. No. 100-711, at 24 (1988). And Title II of the ADA prohibits local governments from enacting zoning laws that

discriminate based on disability. *See Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999).[24]

We now hold that Appellants and other sober living home operators can satisfy the "actual disability" prong *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities. As discussed above, Appellants need not provide individualized evidence of the "actual disability" of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. We have held that plaintiffs may establish an actual disability through non-medical evidence. *See Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858–59 (9th Cir. 2009) ("At the summary judgment stage, 'precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity. . . . Rather, . . . a plaintiff's testimony may suffice to establish a genuine issue of material fact.'" (alterations in original) (citation omitted)).[25] Indeed, the City conceded at oral argument that

---

[24] As the United States aptly pointed out, the City's argument, taken to its logical conclusion, would preclude the owner or operator of *any* proposed facility from surviving summary judgment. By definition, a *proposed* facility has no residents. So no matter how egregious the zoning discrimination, under the City's standard requiring individualized proof of disability, no suit by the owner or operator of a proposed home for people with disabilities would survive summary judgment.

[25] When a plaintiff is an organization that serves the disabled, rather than a person who is disabled, there is no reason similar evidence should not suffice, at least at the summary judgment stage.

new homes could satisfy the actual disability standard using
this type of evidence, i.e., evidence of policies and
procedures that the group home has a zero-tolerance policy,
produced through declarations of individuals related to the
group home. Oral Arg. at 29:45–30:30. There is no reason
to hold existing homes to a higher standard.

Thus, Appellants can prove the "actual disability" of
their current residents and any residents they seek to serve in
the future through admissions criteria and house rules,
testimony by employees and current residents, and
testimony by former residents.[26] Because the district court
applied an incorrect standard, it failed to consider evidence
in the record that might support a finding that Appellants
served or intended to serve individuals with "actual
disabilities."

First, Appellants could show their residents were
"actually disabled" and their future residents would be
"actually disabled" using admissions criteria and house
rules. We have stated that "[p]articipation in a supervised
drug rehabilitation program, coupled with non-use, meets
the definition of handicapped," under the FHA. *City of
Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802,
804 (9th Cir. 1994) (citing 42 U.S.C. § 3602(h) and *United
States v. S. Mgmt. Corp.*, 955 F.2d 914, 922 (4th Cir. 1992)).
Other circuits have reached the same conclusion. *See Reg'l
Econ. Cmty. Action Program, Inc. v. City of Middletown*
("*RECAP*"), 294 F.3d 35, 47–48 (2d Cir. 2002) (holding that
a group home's admissions policies demonstrated that "[a]ll
of the halfway house's residents must be substantially

---

[26] This list is not exclusive, and Appellants could provide other types of
evidence demonstrating "actual disability."

impaired in a major life activity to continue residing there"); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 337 (6th Cir. 2002) (holding methadone clinic's admissions policy supported a finding that individual clients were disabled); *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1010 (3d Cir. 1995) (observing that "no one would be able to meet a nursing home's admissions requirements in the absence of some handicapping condition necessitating nursing home care").

Appellants provided this type of evidence to the district court in each action. RAW provided its house rules and requirements for living in its homes, including its drug testing requirements, to the City. RAW requires residents to attend a twelve-step program or a "peer recovery group," such as Narcotics Anonymous. Further, "RAW drug tests the residents to ensure they are not currently using drugs, two to three times per week, administered by the house manager." RAW also submitted evidence in its use-permit application that drug use is prohibited at all its properties.[27] Finally, RAW stated in its reasonable accommodation request that its residents are "individuals in recovery from alcoholism and substance abuse . . . who cannot live independently without the fear or threat of relapse into active alcoholism and substance abuse."[28] The district court did

---

[27] RAW submitted the permit application, including its house rules, relapse policy, and intake paperwork, as well as its reasonable accommodation application, as exhibits in its compendium of evidence filed with its memorandum in opposition to the City's motion for summary judgment.

[28] This statement is corroborated by deposition testimony, taken under oath, from RAW personnel, and by the public comments of former

not reach the City's evidentiary objections under Federal Rule of Civil Procedure 56(c). We express no view on whether RAW's proffered evidence complied with this rule.[29]

SoCal says that it houses only persons in recovery who are considered disabled under federal and state laws. SoCal proffers evidence of a zero drug and alcohol tolerance policy, says that it demands mandatory involvement in recovery programs, performs randomized drug tests, and requires residents to leave if they relapse. The district court could have relied on admissions criteria that satisfied Rule 56(c) and other relevant evidence to find, in the light most favorable to SoCal, that SoCal's residents are in recovery from alcohol or drug addiction. *See RECAP*, 294 F.3d at 47.

Courts may also consider employee testimony when determining whether a sober living facility houses people with actual disabilities. *See MX Grp.*, 293 F.3d at 331, 337. One RAW employee testified on personal knowledge that the residents stay at the sober living home "until they're about a year sober," after which they're able to "reintegrate[] back into society." RAW's owner testified in his deposition that when a resident's "mother called concerned" that her son had relapsed, the management of the sober living home "confronted him," and when "he admitted to drinking," the owner referred him to detox. He testified that most residents are referred to RAW's homes from treatment centers, where

---

residents at a City Planning Commission meeting regarding RAW's permit applications.

[29] We similarly express no view regarding whether Appellants' other proffered evidence satisfied Rule 56(c).

they had resided for 30 to 90 days (after spending one to two
weeks in detox).  SoCal provided evidence that none of its
current residents were currently using drugs based on the
personal knowledge deposition testimony of three staff
members who testified that: residents move into a SoCal
residence after completing a 30-, 60-, or 90-day rehab
program; the average resident stays for six to eight months;
residents are required to stay sober; the sobriety requirement
is enforced via regular drug and alcohol testing; and if
residents break their sobriety, they are immediately sent
back to rehab.

Finally, the operators of sober living homes can show
residents' disability with former resident testimony.  At a
public hearing for RAW's permit applications, a former
resident of a RAW facility who was "in recovery" stated that
RAW "helped [him] put [his] life back together" after he
arrived there "broken," having "lost everything that had
mattered to [him—] job, house, family."  This statement
could show that his addiction substantially limited his ability
to work, maintain housing, and maintain relationships under
FEHA's definition of disability.  *See RECAP*, 294 F.3d at
47; Cal. Gov't Code §§ 12955.3, 12926(j), (m).  The former
resident also spoke about how he and his roommates "had a
target on [their] backs and . . . wanted to show [this]
communit[y] that [they] could be a part of it."  A former
SoCal resident testified that without sober living, he was
certain he would relapse.  It was therefore "really important
for [him] to be [around] other people who [had] the same
mindset or the same goals."  He testified that when he was
using drugs, he could not hold down a job or have a normal
life, and was at constant risk of overdosing.

In both actions. the district court applied the wrong legal
standard to determine whether SoCal and RAW met their

burden of demonstrating a triable issue of fact as to whether their residents were "actually disabled" under the ADA or FHA. The court unnecessarily limited its inquiry to individualized medical evidence of the disability of current residents, which Appellants chose not to provide.[30] Instead, the court ought to have considered all the relevant evidence complying with Rule 56(c) and showing that Appellants served and intended to serve individuals with actual disabilities. We therefore reverse the grant of summary judgment and remand for the district court to evaluate the evidence in accord with Rule 56(c) and to apply the appropriate legal standards.[31]

### C. "Regarded As" Disabled

"In 2008, Congress enacted the [ADAAA], which broadened the definition of disability under the [ADA]." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 430 (9th Cir. 2018). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). After the ADA was amended, Appellants no longer needed to show that the City subjectively believed

---

[30] We do not reach whether Appellants' refusal to produce records or other information (whether as requested or redacted) was justified or appropriate.

[31] If Appellants can proceed past summary judgment, they need to prove, among other things, discrimination on the merits of their disparate treatment, disparate impact, or reasonable accommodation claims. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114–19 (9th Cir. 2008) (providing the elements of each claim). The merits of these claims were not at issue before the district court and are not at issue on appeal.

that Appellants (or those they served) were substantially limited in a major life activity or disabled, in order to meet the "regarded as" prong of the disability definition. *See Nunies*, 908 F.3d at 434; *see also* 28 C.F.R. § 35.108(f)(1) (providing that the "regarded as" prong does not require showing that "the public entity" perceived the "actual or perceived impairment" as substantially limiting a major life activity). To establish disability under the "regarded as disabled" prong, Appellants need to show that the City perceived their "clients as being disabled and discriminated against them on that basis." *MX Grp.*, 293 F.3d at 340. The analysis turns on how an individual is perceived by others. *See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28 C.F.R. § 35.108(f)(1). This question is fact-dependent and is adjudicated on a case-by-case basis.

Here, the district court erred by applying the pre-ADAAA standard. As Appellants and the United States argue, Appellants need not show that the City subjectively believed that all the residents (or even some specific residents) of Appellants' sober living homes were disabled. The district court's holding to the contrary is error.

Sober living homes, by the City's own definition, serve people with disabilities: "Sober living home[s]" are "group home[s] for persons who are recovering from a drug and/or alcohol addiction and *who are considered handicapped under state or federal law.*" Costa Mesa, Cal., Mun. Code § 13-6 (emphasis added). This is evidence that the district court must consider in deciding whether there is a triable issue of fact as to whether the City regarded the residents (or potential residents) of the sober living homes as disabled or handicapped, as the terms are used in the FHA and the ADA.

There is additional evidence that the district court must

also consider, if the district court finds it presented in accord
with Rule 56(c). First, language in the permit denial letters
and resolutions concerning whether the City regarded
Appellants as serving people with disabilities in their sober
living homes. For example, the Development Director's
initial denial of RAW's reasonable accommodation requests
stated: "I accept for purposes of your request that you are
making this request on behalf of individuals who are
considered disabled under state and federal law." Similarly,
the Planning Commission stated that RAW "currently
operates a sober living facility" at each Jeffrey Drive
location and the Knox Street home. The Planning
Commission was concerned that granting the permit for the
Jeffrey Drive homes would have been "materially
detrimental to other properties within the area," "to the
health, safety and general welfare of the public," and "to the
residential character of the City's neighborhoods" because
"[t]he operation of a group home on contiguous parcels
would result in the overconcentration of such facilities in
[the] neighborhood." The City Council's resolution denying
the permit for the Knox Street location found that "[t]he
facility will contribute to the overconcentration of drug and
alcohol treatment facilities and sober living homes in this
neighborhood, which could lead to negative impacts in the
neighborhood." The Planning Commission also rejected
SoCal's permit applications for its Cecil, Hudson, and 21st
Street residences through formal resolutions, each of which
made a formal finding that the residence *was* a "sober living
home" as defined by statute. To the extent this evidence is
admissible, the City's recognition of Appellants' facilities as
"sober living homes" seems to admit under the City's own
definition that residents are "considered handicapped under
state or federal law." Costa Mesa, Cal., Mun. Code § 13-6.

Further, the City cited and fined Appellants for operating sober living homes without approval. The City issued notices of violation to all three of SoCal's homes on the grounds that they were "sober living homes" operating without a permit. SoCal also received citations for violating the Ordinances. The City filed an abatement action against SoCal on the ground that it was operating a "sober living home" without a permit at the Hudson Street property. In its abatement complaint, the City repeatedly alleged that the Hudson Street residence was a "sober living group home." The City issued citations to RAW's residences for "operation of a sober living / group home without [City] approval," and sued RAW in state court to enjoin and abate "operation of an unlawful sober living group home." The state trial judge found that RAW was "operating a sober living home" or "allowing the operation of a sober living home" at its Knox Street location.**[32]**

On summary judgment, the district court can also consider appropriate evidence as to whether the City's actions were based on unfounded fears and stereotypes, since the "regarded as" prong concerns how people with disabilities are perceived by others. *See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28 C.F.R. § 35.108(f)(1). Here, the City may have been influenced by the way others wrote and spoke about those with disabilities at public hearings. Congress added the "regarded as" prong because of its concern that "society's accumulated myths

---

**[32]** We may take judicial notice of the state court's findings in the abatement action, as a matter of public record that is not subject to reasonable dispute. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 964 n.3 (9th Cir. 2021); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011).

and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 50 (2d Cir. 2015) (cleaned up) (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 284 (1987)). The oral testimony given at public hearings and written statements submitted to the City by residents opposing the permit applications for Appellants' sober living homes reflect stereotypes about the homes' residents. Some described the residents of sober living homes as "capable of mayhem and violence," and as the cause of "[c]rime and homelessness." One person shared that single women are "uncomfortable" with residents of a sober living home residing so close to their homes. The City referenced some of these stereotypes in its decisions denying Appellants' permit applications. The Sixth Circuit, *see MX Grp.*, 293 F.3d at 342, and the Fourth Circuit, *see S. Mgmt. Corp.*, 955 F.2d at 919, decided that this type of public speech about sober living home residents was evidence that the government regarded the population under discussion as disabled. We agree that this type of evidence, if appropriately presented and to the extent it appears in the City Council's stated reasons for adopting the Ordinances or denying permits and reasonable accommodation requests, should be considered in the "regarded as disabled" analysis.

This type of evidence, if it can be considered under Rule 56(c), should have been examined by the district court in analyzing whether, in the light most favorable to Appellants, the City regarded Appellants' residents as disabled. We therefore reverse each district court decision and remand for the court to consider whether Appellants established a genuine dispute of material fact on this prong.

## IV. CONCLUSION

For the reasons stated above, we **REVERSE** and **REMAND** to the district court. In each action, the district court erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition, and that Appellants must prove the City's "subjective belief" that their residents were disabled under the "regarded as" prong. In the context of zoning discrimination against a home that aims to serve people with disabilities, we hold that courts must look at the evidence showing that the home serves or intends to serve individuals with actual disabilities *on a collective basis*, including the home's policies and the standards the municipality uses to evaluate the residence. Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled. This type of evidence, if it satisfied the requirements of Rule 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs. We reverse each of the district court's grants of summary judgment and remand for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or

"regarded as disabled" prongs of the disability definition.**[33]**

**REVERSED AND REMANDED.**

---

**[33]** In light of this disposition and given the City's concession at oral argument, we also vacate and remand the awards of attorneys' fees and costs, without prejudice. *See Green v. Mercy Hous., Inc.*, 991 F.3d 1056, 1057–58 (9th Cir. 2021); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012).

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOCAL RECOVERY, LLC, a California limited liability company; ROGER LAWSON, | No. 20-55820 |
| | D.C. No. 8:18-cv-01304-JVS-PJW |
| *Plaintiffs-Appellants,* | |
| v. | |
| | OPINION |
| CITY OF COSTA MESA, a municipal corporation; DOES, 1-100, | |
| *Defendants-Appellees.* | |

| | |
|---|---|
| RAW RECOVERY, LLC, a California limited liability company, | No. 20-55870 |
| | D.C. No. 8:18-cv-01080-JVS-PJW |
| *Plaintiff-Appellant,* | |
| v. | |
| CITY OF COSTA MESA, | |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted July 12, 2022
Pasadena, California

Filed January 3, 2023

Before:  Kim McLane Wardlaw and Mark J. Bennett,
Circuit Judges, and Gary S. Katzmann,[*] Judge.

Opinion by Judge Bennett

---

**SUMMARY**[**]

---

**Disability / Housing**

The panel reversed the district court's summary judgment in favor of the City of Costa Mesa in cases in which plaintiffs-appellants ("Appellants"), operators of sober living homes for persons recovering from drug and alcohol addiction, alleged that two new City ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA),

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the Americans with Disabilities Act (ADA), and the California Fair Employment and Housing Act (FEHA).

The ordinances, which made it unlawful to operate sober living homes without a permit, define sober living homes as group homes serving those who are "recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law," and define group homes as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." Until the ordinances were adopted, the City did not regulate sober living homes differently from other residences. The ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center. No existing homes were grandfathered—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home. The ordinances did not address the criteria used to determine which home could remain, but provided that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers. The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement. The City issued citations to Appellants for operating the sober living

homes without approval, and filed state court abatement actions against Appellants.

Granting the City's motions for summary judgment, the district court found that Appellants did not establish that residents in their sober living homes were actually disabled, or that the City regarded their residents as disabled.

The panel held that Appellants and other sober living home operators can satisfy the "actual disability" prong of the ADA, FHA, or FEHA *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities; they need not provide individualized evidence of the actual disability of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. The panel held that in each action, the district court therefore erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition.

The panel held that in determining whether Appellants can establish disability under the "regarded as disabled" prong of the disability definition, the district court erred by finding that Appellants must prove the City's "subjective belief" that their residents were disabled. The panel explained that under this prong, the analysis turns on how an individual is perceived by others.

The panel noted that Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content

of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled. The panel wrote that this type of evidence, if it satisfied the requirements of Federal Rule of Civil Procedure 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs. The panel therefore reversed each of the district court's grants of summary judgment and remanded for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or "regarded as disabled" prongs of the disability definition.

## COUNSEL

Christopher Brancart (argued) and Elizabeth Brancart, Brancart & Brancart, Pescadero, California; Steven G. Polin, Law Offices of Steven G. Polin, Washington, D.C.; Garrett Prybylo, Seyfnia & Prybylo LLP, Los Angeles, California; Isaac Zyfaty, Much Shelist PC, Newport Beach, California; for Plaintiffs-Appellants.

Mary-Christine Sungaila (argued) and Efrat M. Cogan, Buchalter APC, Irvine, California; Seymour B. Everett, Samantha E. Dorey, and Christopher D. Lee, Everett Dorey LLP, Irvine, California; Kimberly Hall Barlow and James Touchstone, Jones & Mayer, Fullerton, California; for Defendants-Appellees.

Brant S. Levine (argued) and Nicolas Y. Riley, Attorneys; Pamela S. Karlan, Principal Deputy Assistant Attorney General; Kristen Clarke, Assistant Attorney General United

States Department of Justice, Civil Rights Division,
Appellate Section, Washington, D.C.; Heather Nodler and
Shira E. Gordon, Trial Attorneys; Jeanine Worden,
Associate General Counsel for Fair Housing; Sasha
Samberg-Champion, Deputy General Counsel for
Enforcement and Fair Housing; Damon Smith, General
Counsel; Department of Housing and Urban Development,
Office of General Counsel, Office of Fair Housing,
Washington, D.C.; for Amicus Curiae United States of
America.

## OPINION

BENNETT, Circuit Judge:

In 2014, the City of Costa Mesa ("City") began
amending its zoning code to reduce the number and
concentration of sober living homes in its residential
neighborhoods. Two of its new ordinances—Ordinances
14-13 and 15-11 ("Ordinances")—made it unlawful to
operate sober living homes without a permit. The
Ordinances define sober living homes as group homes
serving those who are "recovering from a drug and/or
alcohol addiction and who are considered handicapped
under state or federal law," and define group homes as
"facilit[ies] that [are] being used as a supportive living
environment for persons who are considered handicapped
under state or federal law." Costa Mesa, Cal., Mun. Code §
13-6. Unlike addiction treatment facilities, sober living
homes do not require a license from the state of California.
Until the Ordinances were adopted, the City did not regulate
sober living homes differently from other residences.

The Ordinances required all sober living homes, including established homes, to be located more than 650 feet away from any other sober living home or any state-licensed drug and alcohol treatment center.  No existing homes were grandfathered under the Ordinances—i.e., if two operating sober living homes were within 650 feet of each other, one would have to cease operating as a sober living home.  The Ordinances did not address the criteria used to determine which home could remain.    They provided, however, that applicants could request reasonable accommodations from permit conditions and requirements, like the 650-foot requirement.

Plaintiffs-Appellants SoCal Recovery, LLC ("SoCal") and RAW Recovery, LLC ("RAW") (together, "Appellants") operate sober living homes in Costa Mesa, California, for persons recovering from drug and alcohol addiction.  Appellants submitted both permit applications and reasonable accommodation requests to the City so they could continue to operate their sober living homes, even those that were operating within 650 feet of other sober living homes or state-licensed drug and alcohol treatment centers.[1]  The City found that Appellants were operating sober living homes but denied some permits and reasonable accommodation requests because the homes were operating in violation of the new separation requirement.[2]  The City issued citations to Appellants for operating the sober living homes without approval.  The City also filed state court

---

[1] Four sober living homes at issue in this appeal were opened or acquired after 2014, but before the applicable Ordinances went into effect.

[2] Two other reasonable accommodation requests were denied because they were not submitted in writing, as required by the Ordinances.

abatement actions against Appellants.

Appellants sued the City, arguing that the Ordinances and the City's enforcement practices discriminated against them on the basis of disability under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900 et seq.[3]  The City moved for summary judgment against Appellants.  The district court granted the City's motions, finding that Appellants did not establish that residents in their sober living homes were actually disabled,[4] or that the City regarded their residents as disabled.[5]

---

[3] Appellants withdrew other claims they brought under 42 U.S.C. §§ 1985–1986 and California Government Code §§ 11135, 65008. Appellants also brought a retaliation claim under the FHA and a claim under 42 U.S.C. § 1983.  The district court granted summary judgment to the City on both.  The district court awarded the City attorneys' fees on all these claims, which it found "were asserted in a frivolous fashion." Using a rough estimate, the district court found 10% of the City's total requested fees were related to the frivolous claims and awarded the City $21,935.84 in fees in RAW's case and $20,923.01 in fees in SoCal's case.

[4] The district court held that Appellants must prove their "clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal Recovery, LLC v. City of Costa Mesa et al.*, No. SACV 18-1304, 2020 WL 2528002, at *5 (C.D. Cal. Apr. 10, 2020), *reconsideration denied*, No. SACV 18-1304, 2020 WL 4668145 (C.D. Cal. July 20, 2020).

[5] We grant RAW's motion to take judicial notice of the City Council resolution upholding the denial of the Knox Street home and the state court judgment and order in the City's abatement action against that home.  We deny as unnecessary Appellants' motions to take judicial notice of City Council and Planning Commission resolutions that are already in the record.

Because the district court erred by requiring Appellants to adduce individualized evidence of actual disability and failing to consider evidence that the City regarded the residents of the sober living homes as disabled, we reverse the district court's grant of summary judgment in both cases.

## I. BACKGROUND

### A. Sober Living Home Zoning Regulations

Through its 2014 and 2015 Ordinances, the City imposed new zoning regulations regarding group housing for persons with disabilities. Before the Ordinances, about 94 unlicensed sober living homes were legally operating in residential zones. Appellants argue that between 2014 and 2017, 73 sober living homes had closed.[6] The City's website indicates that there are 16 approved sober living homes today.[7] The City adopted the 650-foot separation restriction and other restrictions in an explicit effort to reduce the number of sober living homes operating within the City. The City was concerned about the "overconcentration" of sober living homes in some neighborhoods, which the City

---

[6] The source in the record cited by Appellants lists 68 closures, assuming each entry is a different property.

[7] *See City Approved Sober Living/Group Homes*, https://app.smartsheet.com/b/publish?EQBCT=f6f1941be3624556ab1b 03e829df4639 (last visited Aug. 31, 2022); *see also Group Homes/Sober Living Information and Application*, Costa Mesa, https://www.costamesaca.gov/city-hall/city-departments/development-services/community-improvement-division/group-homes-sober-living-information (last visited Aug. 31, 2022) (providing information on "City approved sober living/group homes," "Operators that have closed," and "Group homes cited").

believed was "deleterious" to those neighborhoods' residential character.

The 2014 Ordinance, Ordinance 14-13, regulates group housing for persons with disabilities in single-family districts. Costa Mesa Mun. Code §§ 13-310–312. It defined "[s]ober living home" as: "a group home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law." *Id.* § 13-6. "Group home[s]," in turn, are defined as "facilit[ies] that [are] being used as a supportive living environment for persons who are considered handicapped under state or federal law." *Id.*

Ordinance 14-13 made it unlawful to operate a sober living home in a single-family district without obtaining a special use permit. *Id.* § 13-311. Group homes in single-family districts were limited to six occupants and needed to have a "house manager" residing in the home and present on a 24-hour basis. *Id.* § 13-311(a)(2), (a)(4).

In addition to the group home requirements, sober living homes needed to meet certain additional conditions. Relevant here, a sober living home could not be "located within six hundred fifty (650) feet, as measured from the closest property lines, of any other sober living home or a state licensed alcoholism or drug abuse recovery or treatment facility" ("separation requirement"). *Id.* § 13-311(a)(14)(i)**.[8]** An applicant could seek relief from the

---

**[8]** Other requirements include that all occupants other than the house manager are "actively participating in legitimate recovery programs." § 13-311(a)(14)(ii). Additionally, "[t]he sober living home's rules and regulations must prohibit the use of any alcohol or any non-prescription drugs at the sober living home or by any recovering addict either on or off site." § 13-311(a)(14)(iii).

"strict application" of the permit requirements by requesting a reasonable accommodation. *Id.* § 13-311(a)(15).[9]

The 2015 Ordinance, Ordinance 15-11, applied similar zoning regulations as Ordinance 14-13 but to multi-family residential districts. *Id.* §§ 13-322 to 324. The same conditions for a special use permit under Ordinance 14-13 applied to existing group homes with six or fewer residents, including the 650-foot separation requirement for sober

---

[9] Permit applications are first submitted to the Director of Economic and Development Services ("Development Director"), who may make an initial determination, or designate another official to do so. Costa Mesa, Cal., Mun. Code §§ 13-311, 322; *see id.* § 13-6 (defining "director" as "[t]he director of [economic and] development services of the City of Costa Mesa, or his or her designee"). In this case, the Development Director designated the City's Zoning Administrator to make an initial decision regarding a subset of sober home applications. An unfavorable decision by the Development Director or Zoning Administrator is appealable to the City Planning Commission and then to the City Council. *Id.* §§ 13-8 to -11. The application shall include, inter alia, a copy of the group home rules and regulations, the relapse policy, and "[a]n affirmation by the owner/operator that only residents (other than the house manager) who are handicapped as defined by state and federal law shall reside at the group home." *Id.* § 13-311(a)(1)(viii).

Reasonable accommodation requests must be filed in writing with the Planning Division. *Id.* § 13-200.62(a)–(b). Applicants shall state "[t]he basis for the claim that the individuals are considered disabled under state or federal law, and why the accommodation is necessary to provide equal opportunity for housing and to make the specific housing available to the individuals." *Id.* § 13-200.62(b)(2). And the application shall include documentation that the applicant is "an individual with a disability," "applying on behalf of one or more individuals with a disability," or "a developer or provider of housing for one or more individuals with a disability." *Id.* § 13-200.62(b)(4). The Development Director's decision on the request for reasonable accommodation can be appealed to the Planning Commission, and then the City Council. *Id.* §§ 13-7, -8, -10(i)(2)(c), -11(b).

living homes. *Id.* §§ 13-322, -324(a). Existing group homes and sober living homes with seven or more residents needed to obtain a conditional use permit within one year, and to apply for an operator's permit within 120 days. *Id.* §§ 13-323, -324(b). A 650-foot separation requirement also applied to sober living homes with seven or more residents. *Id.* § 13-323(b). As with Ordinance 14-13, under Ordinance 15-11, a group home could seek relief from the "strict application" of the permit requirements by submitting a request for reasonable accommodation exempting it from a requirement. *Id.* §§ 13-322(c), -200.62. Permit applications would be reviewed by the Development Director and could be appealed to the Planning Commission and City Council. *Id.* §§ 13-7 to -11.

All permitting requirements in the Ordinances applied to both existing sober living homes and proposed sober living homes. Since the Ordinances passed, the City has received fifty-two reasonable accommodation requests from group homes and has granted three, none to Appellants.

**B. SoCal Recovery, LLC**

SoCal operates three sober living homes relevant to this appeal. Two of the homes, located on Hudson Avenue and Cecil Place, both opened before November 2014, are in single-family districts, and provide housing to six or fewer residents in recovery. One property, on East 21st Street, is in a multi-family residential district, providing housing for up to thirty-two residents in recovery. The East 21st Street home opened prior to December 2015, before the multi-family residential district Ordinance took effect. Each of the homes is within 650 feet of another facility covered by the Ordinances.

SoCal submitted permit applications for all three homes and applied for a reasonable accommodation from the 650-foot requirement for the 21st Street property. The City's Development Director denied the reasonable accommodation request, citing the 650-foot separation requirement and concerns about the overconcentration of sober living residences in the area. At a 2016 public hearing, SoCal verbally requested reasonable accommodations for the Hudson Avenue and Cecil Place homes. The Zoning Administrator denied the permit applications because the houses violated the 650-foot separation requirement and denied the reasonable accommodation requests because they were not made in writing.

SoCal appealed. The Planning Commission upheld the denial of the reasonable accommodation request and permit application for the 21st Street property. The Planning Commission upheld the denials of the permit applications for the Hudson Avenue and Cecil Place homes without discussing the reasonable accommodations requests.[10] The City Council adopted resolutions upholding the decisions of the Planning Commission, finding that each of the homes violated the separation requirement. The City Council "determined that a separation requirement for such facilities will still allow for a reasonable market for the purchase and operation of sober living homes within the City and still result in preferential treatment for sober living homes."

Like the Planning Commission, the City Council denied the reasonable accommodation request for the 21st Street

---

[10] SoCal did not appeal the reasonable accommodation denial for the Hudson Avenue and Cecil Place homes to the City Council.

home, finding that waiver of the 650-foot separation requirement was "not necessary to allow one or more individuals who are recovering from drug and alcohol abuse to enjoy the use of <u>a</u> dwelling within the City" even if, "[i]n theory, [waiving the requirement] would allow [them] to enjoy the use of <u>these</u> dwellings."

The City then issued notices of violation to all three homes, informing SoCal that they were operating unlicensed homes in violation of the Zoning Code and ordering them to cease operations within sixty days. The City also brought an abatement action in state court, targeting one of the homes.

SoCal then brought this suit. SoCal alleged that its sober living homes were illegally "subject to the discriminatory limitation" in the zoning code—the "separation requirement limiting the number of Sober Living Homes that may exist" in the residential zones.[11]

During discovery, the City requested from SoCal documents related to the "disability" status of every one of its clients. The records the City requested included "all medical records from all health care providers which provided any of [SoCal's] clients any treatment [starting from] January 1, 2014," "all documents that relate to clients' medical and health information and histories, and information and histories regarding clients' drug use," and records of all drug tests performed at the facilities. SoCal refused to produce those documents, or to have any of its employees testify about them, asserting that they were

---

[11] SoCal also filed a motion for a preliminary injunction, which the district court denied. We previously affirmed the district court's decision.

privileged under HIPAA.[12]  The City moved for summary
judgment, arguing that without individualized evidence,
SoCal's statutory disability discrimination claims failed
because SoCal had not demonstrated a genuine dispute of
material fact as to whether any of its residents were
"disabled" under the ADA and FEHA, or "handicapped"
under the FHA.

On summary judgment, two relevant issues were
whether Appellants' residents had an actual disability or
were regarded as disabled by the City.  First, SoCal argued
that a triable issue of fact existed as to whether any of its
residents had an "actual disability" based on evidence about
its admissions policies, rules, and daily operations, as well
as deposition testimony from SoCal staff.  To argue that their
residents were regarded as disabled by the City, SoCal also
cited assertions by the City, including in the language of the
Ordinances, the City's administrative rulings on the sober
living homes' zoning requests, and the state court abatement
action.

Second, SoCal argued that a disputed factual issue
existed as to whether the City regarded its residents as
disabled, pointing to the City's statements throughout the
permit application and reasonable accommodation process,
as well as the residents' testimony to the City Council.
SoCal cited the City's admission that SoCal "made a
showing that the [reasonable accommodation] application is
on behalf of disabled individuals in recovery from drug and
alcohol substance abuse."  Thus, under the definitions in the
Ordinances, SoCal stated that it was "required to prove that

---

[12] The City did not seek to compel production of the medical records
SoCal refused to produce.

it was making a reasonable accommodation request on behalf of disabled individuals." SoCal argued that the Ordinances classified "a disabled household . . . as a Sober Living Home" and then subjected it to "discriminatory limitation[s] . . . that are not imposed on other groups of unrelated non-disabled persons or other groups of disabled persons."

### C. RAW Recovery, LLC

RAW provides "housing to disabled individuals in recovery from drug and alcohol abuse." Before the 2015 Ordinance went into effect, RAW provided sober living at three homes in multi-family zoning districts in Costa Mesa. Two were on adjacent parcels on Jeffrey Drive and one was on Knox Street.

Pursuant to Ordinance 15-11, RAW submitted timely conditional use permit applications and reasonable accommodation requests for the three homes. In its reasonable accommodation requests, RAW sought "waiver of the spacing requirements," so that its contiguous locations on Jeffrey Drive could remain open and its Knox Street home could be treated as a "single housekeeping unit" and thereby be exempted from the Ordinances' requirements for group homes.[13]  RAW's applications and requests were

---

[13] The Ordinances specifically exempt "any group home that operates as a single housekeeping unit" from regulations concerning group homes. Costa Mesa, Cal., Mun. Code § 13-6. Designation as a single housekeeping unit "means that the occupants of a dwelling unit have established ties and familiarity with each other, jointly use common areas, interact with each other, share meals, household activities, and expenses and responsibilities; membership in the single housekeeping unit is fairly stable as opposed to transient, members have some control

denied; the contiguous Jeffrey Drive homes were denied at
each stage of the process, whereas the Knox Street home's
application denial was more complicated.**14**

RAW joined a federal court action seeking monetary,
declaratory, and injunctive relief for zoning discrimination

---

over who becomes a member of the household, and the residential
activities of the household are conducted on a nonprofit basis." *Id.* Such
designation exempts a dwelling from, inter alia, the 650-foot
requirement. *See id.* § 13-311.

Notably, the City Council provided in the 2014 Ordinance that "sober
living homes do not function as a single-family unit nor do they fit the
City's zoning definition of a single-family for the following reasons: (1)
they house extremely transient populations . . .; (2) the residents
generally have no established ties to each other . . .; (3) neighbors
generally do not know who or who does not reside in the home; (4) the
residents have little to no say about who lives or doesn't live in the
home," among others.

RAW did not specifically argue that its Knox Street home met the
definition of a "single housekeeping unit," but did state in its reasonable
accommodation application that "residents of RAW are not 'transient'
by nature and function and interact with each other much in the same
way as 'the functional equivalent of a traditional family.'"

**14** RAW's Knox Street conditional use permit application, was initially
denied by the Development Director, then approved by the Planning
Commission on appeal. Two City Councilmembers called for review
because they believed the home was within 650 feet of a state-licensed
facility. Though a City attorney advised that Ordinance 15-11 "would
not permit the City Council to take into consideration state licensed
homes that had not applied for use permits, as a basis for finding a 650
foot separation conflict," the City Council reviewed the application,
overturned the Planning Commission, and revoked the permit. The City
Council cited maintenance and secondary concerns of smoking and
noise. The City Council passed a resolution reflecting the revocation of
the permit, citing the separation requirement.

on the basis of disability.[15]  RAW primarily argued that the
City's "draconian permitting requirements" for group homes
and sober living homes "are discriminatory on [their] face,
and as applied to Plaintiffs, as well as other applicants
similarly situated."  RAW asserted that "Ordinance 15-11,
which requires that all group homes be at least 650 feet
apart," is a "tool[] the City uses to enforce its policy of
discrimination" against people in recovery.

The City moved for summary judgment, arguing that
"Plaintiffs' discrimination claims fail because Plaintiffs
cannot meet their burden to prove that they are associated
with individuals that qualify as disabled."  The City alleged
that RAW "must prove on a case-by-case basis" that all its
residents are disabled or regarded as disabled and are no
longer using illegal drugs.[16]  Because RAW did not do so,
the City argued, "all of [its] claims fail."  RAW argued that
it could prove the disability of its residents through the City's
admissions and witness testimony.  It argued that "[t]here
should be no doubt that [RAW's] patients are statutorily
handicapped" given they are recovering from drug and/or
alcohol addiction and they must be sober to live in RAW's
homes.  RAW also argued that "[t]here is no question that
the City of Costa Mesa regarded the individuals residing in

---

[15] Northbound Treatment Services, which is no longer a party to this
case, filed the initial complaint, and added RAW as a plaintiff in its first
amended complaint.

[16] As with SoCal, the City requested "all medical records from all health
care providers which provided any of [RAW's] clients any treatment at
any time [starting from January 1, 2014] to present," as well as "all
documents that relate to clients' medical and mental health information
and histories, and information and histories regarding clients' drug use."
RAW refused to produce the records, and the City never sought to
compel their production.

[RAW's] group homes and sober living homes as disabled" because "[i]t is memorialized in every step of the use permit application process and reasonable accommodation requests." RAW argued that the City's permit and reasonable accommodation processes required RAW "to put forward proof of the disability of the residents," stating that the "City in processing the applications has admitted and accepted that Plaintiffs provided housing to a class of disabled persons." Finally, RAW argued that the City regarded their residents as disabled because of City resident testimony at the City Council hearing indicating "fear of the influx of felons coming into the neighborhood, and the violence and damage" they would bring.

## D. District Court Proceedings

The district court issued substantively similar rulings in each case, granting summary judgment to the City on Appellants' ADA, FHA, and FEHA claims because Appellants had failed to create a genuine dispute of material fact as to whether their clients have a "handicap" or "disability" under the statutory definition. *SoCal*, 2020 WL 2528002, at \*4–6; *Nat'l Therapeutic Servs., Inc. v. City of Costa Mesa*, No. SACV 18-1080, 2020 WL 5005550, at \*6 (C.D. Cal. July 17, 2020). Under the FHA and the ADA, "disability" is defined as "(1) a physical or mental impairment which substantially limits one or more . . . major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); *see also id.* § 12102(1). Though the FHA uses the word "handicap" instead of "disability," "handicap" is defined using the same three alternative definitional prongs as "disability" under the ADA. Thus, the words "handicap" and "disability" are construed to have the same meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

FEHA defines "mental disability" and "physical disability" more specifically and incorporates the ADA's definition of disability if it provides "broader protection or coverage." *See* Cal. Gov't Code § 12926(j), (m), (n). Federal courts analyze FEHA claims under the same standard as FHA claims. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013).

On the "actual disability" prong of the disability definition, the district court concluded in each case that Appellants were required to provide individualized evidence that "their clients," *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *6, "have a physical or mental impairment that substantially limits one or more major life activities." *SoCal*, 2020 WL 2528002, at *5. In each case, the court agreed with the City that there is no "per se rule that all individuals in a drug rehabilitation program qualify as disabled or protected." *Id.* at *4; *see also Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *4. According to the district court in *SoCal*, "[t]hat [Appellants] require[] sobriety for [their] residents does not change that [they] must prove [their] clients have a substantial impairment to a major life activity, on a case-by-case basis." *SoCal*, 2020 WL 2528002, at *5.

In both actions, the district court held that Appellants did not meet the "record of disability" prong of the definition because they did not produce their residents' medical records and asserted privilege when the City requested those records during discovery.[17] *Id.* at *5; *Nat'l Therapeutic Servs.*, 2020

---

[17] Appellants did not rely on this prong below to establish that their clients were disabled.

WL 5005550, at *5. As to the "regarded as" prong of the definition, the court's only proffered reason for granting summary judgment was that Appellants' evidence was "either inadmissible, mischaracterize[d] what the City required from [Appellants] in the application process, and/or [did] not establish the City's subjective belief of the clients' impairments."[18]     *Nat'l Therapeutic Servs.*, 2020 WL 5005550, at *5; *see also SoCal*, 2020 WL 2528002, at *6.

Appellants timely appealed the grants of summary judgment.[19]

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 922 (9th Cir. 2004).

---

[18] The district court did not discuss in either case which evidence was inadmissible or why any of the evidence was inadmissible. And it did not discuss how Appellants had mischaracterized what the City had required of Appellants in the application process.

[19] SoCal filed a motion for partial reconsideration asking the court to reconsider its holding that SoCal had failed to create a material dispute of fact as to whether the City "regarded" its residents as disabled. *SoCal*, 2020 WL 4668145, at *1–2. The court denied that motion, reiterating that the evidence SoCal presented "did not establish a triable issue of fact as to whether the City regarded Plaintiff's *specific clients* as disabled." *Id.* at *2.

## III. DISCUSSION

Appellants argue that the district court applied the wrong legal standard on the questions of what evidence is required to establish actual or perceived disability. They contend that they should not have been required to provide individualized evidence of their clients' disabilities. Appellants also argue that a genuine dispute of material fact exists as to whether their residents are "regarded as" disabled by the City. We agree that the district court applied incorrect legal standards and did not properly consider the summary judgment evidence Appellants presented. We therefore reverse the district court's grants of summary judgment on the FHA, ADA, and FEHA claims.

### A. Statutory Background

Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of a handicap of that person, a resident or intended resident, or any person associated with that person. 42 U.S.C. § 3604(f)(2). The statute gives any "aggrieved person" the right to sue, and broadly defines an "aggrieved person" as anyone who "claims to have been injured by a discriminatory housing practice." *Id.* §§ 3602(i)(1), 3613.

FEHA makes it unlawful "[t]o discriminate [because of disability] through public or private land use practices, decisions, and authorizations." Cal. Gov't Code § 12955(*l*). Any "aggrieved person" can sue. *Id.* § 12989.1. An "aggrieved person" is "any person who claims to have been injured by a discriminatory housing practice or believes that the person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 12927(g). The FHA and FEHA invalidate any state or local law that "purports to

require or permit" an action that would be a discriminatory housing practice. 42 U.S.C. § 3615; Cal. Gov't Code § 12955.6.

Title II of the ADA makes it unlawful for a public entity to discriminate through its zoning laws against (1) a person with a "disability," 42 U.S.C. § 12132, or (2) a person who has a "relationship or association" with a person with a "disability," 28 C.F.R. § 35.130(g). The ADA gives "any person alleging discrimination" under the provision the right to sue. 42 U.S.C. § 12133; *see also Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009).

"Disability" in the ADA (and therefore FEHA) and "handicap" in the FHA are defined as: (1) a "physical or mental impairment which substantially limits one or more of [a] person's major life activities," (2) "a record of having such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. §§ 3602(h), 12102(1).[20] The first definition is often referred to as the "actual disability" prong, and the third as the "regarded as" prong.

## B. Actual Disability

To establish a disability under the "actual disability" prong of the ADA, FHA, or FEHA, a plaintiff must show "a physical or mental impairment" that "substantially limits" their ability to engage in one or more "major life activities." 42 U.S.C. §§ 3602(h), 12102(1); *Pac. Shores Props.*, 730 F.3d at 1156 n.14 (applying FHA standards to FEHA claims). Alcoholism and drug addiction are "impairments"

---

[20] Recall that although FEHA defines "mental disability" and "physical disability" more specifically than the ADA, it incorporates the ADA's definition of "disability" if the ADA would provide broader protection. *See* Cal. Gov't Code § 12926(n).

under the FHA, 24 C.F.R. § 100.201(a)(2), and the ADA, 28
C.F.R. § 35.108(b)(2). *See also Pac. Shores Props.*, 730
F.3d at 1156 ("It is well established that persons recovering
from drug and/or alcohol addiction are disabled under the
FHA and therefore protected from housing
discrimination."). The impairment cannot include "current,
illegal use of or addiction to a controlled substance." 42
U.S.C. § 3602(h); *see also id.* § 12114(a).

The district court concluded in both actions that
Appellants could not establish that *any* of their residents had
an "actual disability" because the evidence they adduced,
including testimony about the admissions policies, house
rules, and general day-to-day operations of their homes, was
not sufficiently "individualized" under *Toyota Motor
Manufacturing, Kentucky, Inc. v. Williams*. 534 U.S. 184,
199 (2002), *superseded on other grounds by* the ADA
Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-
325, 122 Stat. 3553; *see Nat'l Therapeutic Servs.*, 2020 WL
5005550, at *5; *SoCal*, 2020 WL 2528002, at *5. In *Toyota*,
the Supreme Court held that "the ADA requires those
claiming the Act's protection to prove a disability by
offering evidence that the extent of the limitation caused by
their impairment in terms of their own experience is
substantial." 534 U.S. at 198 (cleaned up). Thus, a plaintiff
must prove the relevant person's disability status in a "case-
by-case manner." *Id.*

Appellants contend that an "individualized assessment"
of every resident's disability status was unnecessary for their
zoning discrimination claims to survive summary judgment
or prevail at trial. We agree. At the outset, Appellants had
standing to sue. Appellants are not disabled or handicapped,
but they stated a claim under the FHA because they claimed
they were "'aggrieved' by housing discrimination against

the disabled." *Pac. Shores Props.*, 730 F.3d at 1157 n.16.[21]
They stated a claim under the ADA because they were
"alleging discrimination on the basis of disability." *Id.* at
1157 n.17 (parenthetically quoting 42 U.S.C. § 12133).[22]
They stated a claim under FEHA because they claim to
"have been injured by a discriminatory housing practice."
Cal. Gov't Code §§ 12927(g), 12989.1(a).[23]

The separation requirement prevented Appellants from
conducting their normal business operations.  Thus, they

---

[21] "The sole requirement for standing to sue under the FHA is the Article
III minima of injury in fact: that the plaintiff allege that as a result of the
defendant's actions he has suffered a distinct and palpable injury."
*Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001)
(cleaned up and citation omitted). For purposes of "the FHA. . . a plaintiff
need not be among the class discriminated against in order to have
standing.  In particular, an organization may have standing to bring suit
on its own behalf, without relying in a representative capacity on the
standing of any third parties." *El Dorado Ests. v. City of Fillmore*, 765
F.3d 1118, 1121 (9th Cir. 2014) (citation omitted).

[22] An organization has standing to sue under the ADA on its own behalf
by establishing an "injury in fact if it can demonstrate: (1) frustration of
its organizational mission; and (2) diversion of its resources to combat
the particular conduct in question." *Am. Diabetes Ass'n v. U.S. Dep't of
the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (brackets omitted)
(quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th
Cir. 2004)). Thus, a plaintiff that "has presented evidence that it was
denied a zoning permit because it cares for and/or associates with
individuals who have disabilities . . . has standing to bring . . . suit on its
own behalf." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 335 (6th
Cir. 2002).

[23] Both this court and California courts assess FEHA standing under
FHA standards. *See, e.g.*, *Sisemore v. Master Fin., Inc.*, 151 Cal. App.
4th 1386, 1424–26 (2007) (applying FHA standing analysis to FEHA
claims); *Walker*, 272 F.3d at 1124–25 (Plaintiff had standing under
FEHA because it had standing under the FHA).

were aggrieved by the zoning policies. That every resident may not have been disabled does not mean Appellants were not aggrieved by discrimination against the disabled. Appellants should not have been required to prove the actual disability of their residents, in "a case-by-case manner," to meet the actual disability prong for their sober living homes. *Toyota Motor Mfg.*, 534 U.S. at 198.

Appellants' sober living homes and other dwellings intended for occupancy by persons recovering from alcoholism and drug addiction are protected from illegal discrimination against the disabled without the need for Appellants to present individualized evidence of the "actual disability" of their residents. The district court therefore applied the incorrect legal standard in both actions when it concluded that Appellants could not establish "actual disability" because they failed to present evidence of their residents' disability status.

The panel finds persuasive the United States' amicus brief, which argues that sober living homes need not provide individualized evidence of their residents' disabilities to establish a cause of action for disability discrimination under the FHA or the ADA. Under the FHA, as the United States argued, state and local governments are prohibited from discriminating *on the basis of disability* through zoning and land use practices. *See Pac. Shores Props.*, 730 F.3d at 1157. In discussing amendments to the FHA, the House Judiciary Committee explained that the FHA ban "is intended to prohibit the application of special requirements through . . . conditional or special use permits that have the effect of limiting the ability of [people with disabilities] to live in the residence of their choice in the community." H.R. Rep. No. 100-711, at 24 (1988). And Title II of the ADA prohibits local governments from enacting zoning laws that

discriminate based on disability. *See Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999).[24]

We now hold that Appellants and other sober living home operators can satisfy the "actual disability" prong *on a collective basis* by demonstrating that they serve or intend to serve individuals with actual disabilities. As discussed above, Appellants need not provide individualized evidence of the "actual disability" of their residents. Rather, they can meet their burden by proffering admissible evidence that they have policies and procedures to ensure that they serve or will serve those with actual disabilities and that they adhere or will adhere to such policies and procedures. We have held that plaintiffs may establish an actual disability through non-medical evidence. *See Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858–59 (9th Cir. 2009) ("At the summary judgment stage, 'precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity. . . . Rather, . . . a plaintiff's testimony may suffice to establish a genuine issue of material fact.'" (alterations in original) (citation omitted)).[25] Indeed, the City conceded at oral argument that

---

[24] As the United States aptly pointed out, the City's argument, taken to its logical conclusion, would preclude the owner or operator of *any* proposed facility from surviving summary judgment. By definition, a *proposed* facility has no residents. So no matter how egregious the zoning discrimination, under the City's standard requiring individualized proof of disability, no suit by the owner or operator of a proposed home for people with disabilities would survive summary judgment.

[25] When a plaintiff is an organization that serves the disabled, rather than a person who is disabled, there is no reason similar evidence should not suffice, at least at the summary judgment stage.

new homes could satisfy the actual disability standard using this type of evidence, i.e., evidence of policies and procedures that the group home has a zero-tolerance policy, produced through declarations of individuals related to the group home. Oral Arg. at 29:45–30:30. There is no reason to hold existing homes to a higher standard.

Thus, Appellants can prove the "actual disability" of their current residents and any residents they seek to serve in the future through admissions criteria and house rules, testimony by employees and current residents, and testimony by former residents.[26] Because the district court applied an incorrect standard, it failed to consider evidence in the record that might support a finding that Appellants served or intended to serve individuals with "actual disabilities."

First, Appellants could show their residents were "actually disabled" and their future residents would be "actually disabled" using admissions criteria and house rules. We have stated that "[p]articipation in a supervised drug rehabilitation program, coupled with non-use, meets the definition of handicapped," under the FHA. *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994) (citing 42 U.S.C. § 3602(h) and *United States v. S. Mgmt. Corp.*, 955 F.2d 914, 922 (4th Cir. 1992)). Other circuits have reached the same conclusion. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown* ("*RECAP*"), 294 F.3d 35, 47–48 (2d Cir. 2002) (holding that a group home's admissions policies demonstrated that "[a]ll of the halfway house's residents must be substantially

---

[26] This list is not exclusive, and Appellants could provide other types of evidence demonstrating "actual disability."

impaired in a major life activity to continue residing there");
*MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 337 (6th
Cir. 2002) (holding methadone clinic's admissions policy
supported a finding that individual clients were disabled);
*Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1010 (3d
Cir. 1995) (observing that "no one would be able to meet a
nursing home's admissions requirements in the absence of
some handicapping condition necessitating nursing home
care").

Appellants provided this type of evidence to the district
court in each action. RAW provided its house rules and
requirements for living in its homes, including its drug
testing requirements, to the City. RAW requires residents to
attend a twelve-step program or a "peer recovery group,"
such as Narcotics Anonymous. Further, "RAW drug tests
the residents to ensure they are not currently using drugs,
two to three times per week, administered by the house
manager." RAW also submitted evidence in its use-permit
application that drug use is prohibited at all its properties.[27]
Finally, RAW stated in its reasonable accommodation
request that its residents are "individuals in recovery from
alcoholism and substance abuse . . . who cannot live
independently without the fear or threat of relapse into active
alcoholism and substance abuse."[28] The district court did

---

[27] RAW submitted the permit application, including its house rules,
relapse policy, and intake paperwork, as well as its reasonable
accommodation application, as exhibits in its compendium of evidence
filed with its memorandum in opposition to the City's motion for
summary judgment.

[28] This statement is corroborated by deposition testimony, taken under
oath, from RAW personnel, and by the public comments of former

not reach the City's evidentiary objections under Federal
Rule of Civil Procedure 56(c). We express no view on
whether RAW's proffered evidence complied with this
rule.[29]

SoCal says that it houses only persons in recovery who
are considered disabled under federal and state laws. SoCal
proffers evidence of a zero drug and alcohol tolerance
policy, says that it demands mandatory involvement in
recovery programs, performs randomized drug tests, and
requires residents to leave if they relapse. The district court
could have relied on admissions criteria that satisfied Rule
56(c) and other relevant evidence to find, in the light most
favorable to SoCal, that SoCal's residents are in recovery
from alcohol or drug addiction. *See RECAP*, 294 F.3d at 47.

Courts may also consider employee testimony when
determining whether a sober living facility houses people
with actual disabilities. *See MX Grp.*, 293 F.3d at 331, 337.
One RAW employee testified on personal knowledge that
the residents stay at the sober living home "until they're
about a year sober," after which they're able to "reintegrate[]
back into society." RAW's owner testified in his deposition
that when a resident's "mother called concerned" that her
son had relapsed, the management of the sober living home
"confronted him," and when "he admitted to drinking," the
owner referred him to detox. He testified that most residents
are referred to RAW's homes from treatment centers, where

---

residents at a City Planning Commission meeting regarding RAW's
permit applications.

[29] We similarly express no view regarding whether Appellants' other
proffered evidence satisfied Rule 56(c).

they had resided for 30 to 90 days (after spending one to two weeks in detox). SoCal provided evidence that none of its current residents were currently using drugs based on the personal knowledge deposition testimony of three staff members who testified that: residents move into a SoCal residence after completing a 30-, 60-, or 90-day rehab program; the average resident stays for six to eight months; residents are required to stay sober; the sobriety requirement is enforced via regular drug and alcohol testing; and if residents break their sobriety, they are immediately sent back to rehab.

Finally, the operators of sober living homes can show residents' disability with former resident testimony. At a public hearing for RAW's permit applications, a former resident of a RAW facility who was "in recovery" stated that RAW "helped [him] put [his] life back together" after he arrived there "broken," having "lost everything that had mattered to [him—] job, house, family." This statement could show that his addiction substantially limited his ability to work, maintain housing, and maintain relationships under FEHA's definition of disability. *See RECAP*, 294 F.3d at 47; Cal. Gov't Code §§ 12955.3, 12926(j), (m). The former resident also spoke about how he and his roommates "had a target on [their] backs and . . . wanted to show [this] communit[y] that [they] could be a part of it." A former SoCal resident testified that without sober living, he was certain he would relapse. It was therefore "really important for [him] to be [around] other people who [had] the same mindset or the same goals." He testified that when he was using drugs, he could not hold down a job or have a normal life, and was at constant risk of overdosing.

In both actions. the district court applied the wrong legal standard to determine whether SoCal and RAW met their

burden of demonstrating a triable issue of fact as to whether their residents were "actually disabled" under the ADA or FHA. The court unnecessarily limited its inquiry to individualized medical evidence of the disability of current residents, which Appellants chose not to provide.[30] Instead, the court ought to have considered all the relevant evidence complying with Rule 56(c) and showing that Appellants served and intended to serve individuals with actual disabilities. We therefore reverse the grant of summary judgment and remand for the district court to evaluate the evidence in accord with Rule 56(c) and to apply the appropriate legal standards.[31]

### C. "Regarded As" Disabled

"In 2008, Congress enacted the [ADAAA], which broadened the definition of disability under the [ADA]." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 430 (9th Cir. 2018). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). After the ADA was amended, Appellants no longer needed to show that the City subjectively believed

---

[30] We do not reach whether Appellants' refusal to produce records or other information (whether as requested or redacted) was justified or appropriate.

[31] If Appellants can proceed past summary judgment, they need to prove, among other things, discrimination on the merits of their disparate treatment, disparate impact, or reasonable accommodation claims. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114–19 (9th Cir. 2008) (providing the elements of each claim). The merits of these claims were not at issue before the district court and are not at issue on appeal.

that Appellants (or those they served) were substantially
limited in a major life activity or disabled, in order to meet
the "regarded as" prong of the disability definition. *See
Nunies*, 908 F.3d at 434; *see also* 28 C.F.R. § 35.108(f)(1)
(providing that the "regarded as" prong does not require
showing that "the public entity" perceived the "actual or
perceived impairment" as substantially limiting a major life
activity). To establish disability under the "regarded as
disabled" prong, Appellants need to show that the City
perceived their "clients as being disabled and discriminated
against them on that basis." *MX Grp.*, 293 F.3d at 340. The
analysis turns on how an individual is perceived by others.
*See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28
C.F.R. § 35.108(f)(1). This question is fact-dependent and
is adjudicated on a case-by-case basis.

Here, the district court erred by applying the pre-
ADAAA standard. As Appellants and the United States
argue, Appellants need not show that the City subjectively
believed that all the residents (or even some specific
residents) of Appellants' sober living homes were disabled.
The district court's holding to the contrary is error.

Sober living homes, by the City's own definition, serve
people with disabilities: "Sober living home[s]" are "group
home[s] for persons who are recovering from a drug and/or
alcohol addiction and *who are considered handicapped
under state or federal law.*" Costa Mesa, Cal., Mun. Code §
13-6 (emphasis added). This is evidence that the district
court must consider in deciding whether there is a triable
issue of fact as to whether the City regarded the residents (or
potential residents) of the sober living homes as disabled or
handicapped, as the terms are used in the FHA and the ADA.

There is additional evidence that the district court must

also consider, if the district court finds it presented in accord
with Rule 56(c). First, language in the permit denial letters
and resolutions concerning whether the City regarded
Appellants as serving people with disabilities in their sober
living homes. For example, the Development Director's
initial denial of RAW's reasonable accommodation requests
stated: "I accept for purposes of your request that you are
making this request on behalf of individuals who are
considered disabled under state and federal law." Similarly,
the Planning Commission stated that RAW "currently
operates a sober living facility" at each Jeffrey Drive
location and the Knox Street home. The Planning
Commission was concerned that granting the permit for the
Jeffrey Drive homes would have been "materially
detrimental to other properties within the area," "to the
health, safety and general welfare of the public," and "to the
residential character of the City's neighborhoods" because
"[t]he operation of a group home on contiguous parcels
would result in the overconcentration of such facilities in
[the] neighborhood." The City Council's resolution denying
the permit for the Knox Street location found that "[t]he
facility will contribute to the overconcentration of drug and
alcohol treatment facilities and sober living homes in this
neighborhood, which could lead to negative impacts in the
neighborhood." The Planning Commission also rejected
SoCal's permit applications for its Cecil, Hudson, and 21st
Street residences through formal resolutions, each of which
made a formal finding that the residence *was* a "sober living
home" as defined by statute. To the extent this evidence is
admissible, the City's recognition of Appellants' facilities as
"sober living homes" seems to admit under the City's own
definition that residents are "considered handicapped under
state or federal law." Costa Mesa, Cal., Mun. Code § 13-6.

Further, the City cited and fined Appellants for operating sober living homes without approval. The City issued notices of violation to all three of SoCal's homes on the grounds that they were "sober living homes" operating without a permit. SoCal also received citations for violating the Ordinances. The City filed an abatement action against SoCal on the ground that it was operating a "sober living home" without a permit at the Hudson Street property. In its abatement complaint, the City repeatedly alleged that the Hudson Street residence was a "sober living group home." The City issued citations to RAW's residences for "operation of a sober living / group home without [City] approval," and sued RAW in state court to enjoin and abate "operation of an unlawful sober living group home." The state trial judge found that RAW was "operating a sober living home" or "allowing the operation of a sober living home" at its Knox Street location.**[32]**

On summary judgment, the district court can also consider appropriate evidence as to whether the City's actions were based on unfounded fears and stereotypes, since the "regarded as" prong concerns how people with disabilities are perceived by others. *See* 42 U.S.C. § 12102(1)(C); 24 C.F.R. § 100.201(d); 28 C.F.R. § 35.108(f)(1). Here, the City may have been influenced by the way others wrote and spoke about those with disabilities at public hearings. Congress added the "regarded as" prong because of its concern that "society's accumulated myths

---

**[32]** We may take judicial notice of the state court's findings in the abatement action, as a matter of public record that is not subject to reasonable dispute. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 964 n.3 (9th Cir. 2021); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011).

and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 50 (2d Cir. 2015) (cleaned up) (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 284 (1987)). The oral testimony given at public hearings and written statements submitted to the City by residents opposing the permit applications for Appellants' sober living homes reflect stereotypes about the homes' residents. Some described the residents of sober living homes as "capable of mayhem and violence," and as the cause of "[c]rime and homelessness." One person shared that single women are "uncomfortable" with residents of a sober living home residing so close to their homes. The City referenced some of these stereotypes in its decisions denying Appellants' permit applications. The Sixth Circuit, *see MX Grp.*, 293 F.3d at 342, and the Fourth Circuit, *see S. Mgmt. Corp.*, 955 F.2d at 919, decided that this type of public speech about sober living home residents was evidence that the government regarded the population under discussion as disabled. We agree that this type of evidence, if appropriately presented and to the extent it appears in the City Council's stated reasons for adopting the Ordinances or denying permits and reasonable accommodation requests, should be considered in the "regarded as disabled" analysis.

This type of evidence, if it can be considered under Rule 56(c), should have been examined by the district court in analyzing whether, in the light most favorable to Appellants, the City regarded Appellants' residents as disabled. We therefore reverse each district court decision and remand for the court to consider whether Appellants established a genuine dispute of material fact on this prong.

## IV. CONCLUSION

For the reasons stated above, we **REVERSE** and **REMAND** to the district court.  In each action, the district court erred by finding that an individualized assessment of resident disability was necessary under the "actually disabled" prong of the disability definition, and that Appellants must prove the City's "subjective belief" that their residents were disabled under the "regarded as" prong. In the context of zoning discrimination against a home that aims to serve people with disabilities, we hold that courts must look at the evidence showing that the home serves or intends to serve individuals with actual disabilities *on a collective basis*, including the home's policies and the standards the municipality uses to evaluate the residence. Appellants provided the district court with evidence of (1) admissions criteria and house rules, (2) employee and former resident testimony, (3) public fears and stereotypes of their residents that may have influenced the City's perception, and (4) the actual content of City ordinances, denial letters, resolutions, citations, and abatement actions that acknowledged the residents in Appellants' homes were disabled.    This type of evidence, if it satisfied the requirements of Rule 56(c), should have been considered by the district court in evaluating whether Appellants established triable issues of fact under either or both of the "actually disabled" or "regarded as disabled" prongs.  We reverse each of the district court's grants of summary judgment and remand for the court to consider whether the record contains evidence sufficient to establish a genuine dispute of material fact on the "actually disabled" or

"regarded as disabled" prongs of the disability definition.**[33]**

   **REVERSED AND REMANDED.**

---

**[33]** In light of this disposition and given the City's concession at oral argument, we also vacate and remand the awards of attorneys' fees and costs, without prejudice. *See Green v. Mercy Hous., Inc.*, 991 F.3d 1056, 1057–58 (9th Cir. 2021); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 20-55820, 20-55870

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

PETITION FOR REHEARING EN BANC

**Signature** | s/ Mary-Christine Sungaila | **Date** | January 31, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*